657 F.2d 1118
 The SOUTHEAST LEGAL DEFENSE GROUP, an unincorporated
association; et al., and Vera L. Creekpaul and
Edith Anderson,
Plaintiffs-Appellees/Cross-Appellants,
v.
Brock ADAMS, et al., Defendants,
and
The State of Oregon, etc., et al.,
Defendants-Appellants/Cross-Appellees.
 Nos. 78-2442, 78-2450 and 78-2516.
 United States Court of Appeals,
Ninth Circuit.
 Argued May 8, 1980.
Submitted June 9, 1980.
Decided Oct. 1, 1981.
 
 1
 Charles J. Merten, Portland, Or., for Southeast Legal Defense Group.
 
 
 2
 Walter L. Barrie, Asst. Atty. Gen., Salem, Or., argued for the State of Or. et al.; William F. Nessly, Asst. Atty. Gen., Salem, Or., Jennings Bryan Miller, Baton Rouge, La., Gary Roberts and J. Richard Forester, Portland, Or., on brief.
 
 
 3
 Appeal from the United States District Court for the District of Oregon.
 
 
 4
 Before BROWNING and KILKENNY, Circuit Judges, and TAKASUGI*, District Judge.
 
 TAKASUGI, District Judge:
 BACKGROUND
 
 5
 Plaintiffs, consisting of nineteen (19) individuals and one association, initiated suit in the District Court of Oregon seeking injunctive and declaratory relief against federal ("federal defendants") and state highway officials, the State of Oregon through the State Highway Commission and members thereof ("state defendants") in their individual and official capacities, to enjoin the construction of the Mount Hood Freeway. Plaintiffs contend that the freeway, if constructed, would have either displaced plaintiffs or irreparably damaged their neighborhood.
 
 
 6
 The freeway was to be constructed pursuant to the Federal-Aid Highway Act, 23 U.S.C. §§ 101 et seq. Under said Act, the State is primarily responsible for the planning and construction of the freeway. The federal government then reimburses the state for a substantial portion of the costs of construction approved by the Federal Highway Administration ("FHWA"), the administrative body responsible for the Federal-Aid Highway Program. Such approval is granted in stages and is dependent upon the state's compliance with the Federal-Aid Highway Act and its implementing regulations and directives, including the Policy and Procedure Memoranda ("PPM"). See generally, Lathan v. Brinegar, 506 F.2d 677 (9th Cir. 1974) (en banc).
 
 
 7
 In this action plaintiffs alleged twelve (12) causes of action. In the trial court, plaintiffs prevailed on their eighth claim, which challenged the FHWA approval of the state's selection of a particular corridor for the proposed highway as being violative of 23 U.S.C. § 128(a) and PPM 20-8.
 
 
 8
 Essentially, 23 U.S.C. § 128(a)[1] together with PPM 20-8 (1969)[2] require the holding of corridor public hearings before the state highway department is committed to a specific proposal and as a prerequisite to location approval.
 
 
 9
 The district court, 436 F.Supp. 891, held that a May 1969 corridor public hearing failed to comply with 23 U.S.C. § 128(a) and PPM 20-8 (1969) because the state defendants were already committed to a specific location for the freeway prior to 1969.
 
 
 10
 Defendants assert that earlier editions of PPM 20-8 should govern their corridor selection. The trial court, however, applied PPM 20-8 (1969), which was effective January 14, 1969, and set aside the federal approval of the corridor route. The district court thereby granted plaintiffs complete relief under their eighth claim.
 
 
 11
 In keeping with the judicial policy against unnecessarily deciding constitutional claims, the court dismissed as moot plaintiffs' tenth and eleventh claims which sought relief for constitutional infringements of plaintiffs' rights to due process and the equal protection of the law.[3]
 
 
 12
 Although the decision was predicated upon the Federal-Aid Highway Act and not upon a civil rights and/or constitutional claim, the district court did determine that the provisions of 42 U.S.C. § 1983[4] which relate to "laws of the United States" encompassed violations of any federal law. Accordingly, the trial court, while declining to base its award of attorneys fees under the common fund/common benefit doctrine, awarded such fees pursuant to the Civil Rights Attorneys Fees Act of 1976, 42 U.S.C. §§ 1988.[5] The court awarded fees of $300,000 to private counsel and $60,000 to the Legal Aid Service. Recognizing the immunity from liability of the federal defendants under 28 U.S.C. § 2412,[6] the court reduced the fees to $240,000 for plaintiff's private counsel and $40,000 for Legal Aid Service.
 
 
 13
 The parties appeal and cross-appeal the judgment of the district court, raising the following issues:
 
 
 14
 1. Whether the trial court erred in applying the 1969 edition of the FHWA Policy and Procedure Memorandum to the planning activities conducted by the state defendants, thereby rejecting the applicability of the earlier editions of PPM 20-8.
 
 
 15
 2. Whether the trial court erred in refusing to award attorney fees under the common fund/common benefit theory.
 
 
 16
 3. Whether the district court erred in awarding attorney fees pursuant to the Civil Rights Attorneys Fee Act of 1976, 42 U.S.C. § 1988, where the plaintiff prevailed on a noncivil rights claim or one not involving a constitutional cause of action.
 
 
 17
 4. Whether the district court erred in calculation of attorneys fees in accounting for the federal defendants' immunity from liability for fees under the provisions of 28 U.S.C. § 2412.
 
 
 18
 5. Whether the district court may/should adjust the fee award to account for inflationary factors.
 
 
 19
 6. Whether costs, including attorneys fees, should be awarded for a successful appeal under the Civil Rights Attorneys Fee Act of 1976, 42 U.S.C. § 1988.
 
 DISCUSSION
 I. APPLICATION OF PPM 20-8 (1969)[7]
 
 20
 Defendants contend that the district court improperly applied the 1969 edition of PPM 20-8, since the state's selection of a freeway corridor, which apparently occurred in August 1965 was before the effective date of PPM 20-8 (1969). They further claim that their actions need only comport with the 1959 edition of PPM 20-8, which was in effect at the time of the state's corridor selection. We do not agree.
 
 
 21
 Preliminarily, it should be noted that the state had not obtained, nor apparently even requested, location approval until after the May 1969 corridor hearing. PPM 20-8 (1969) went into effect on January 14, 1969. At the time of the state defendants' request for location approval and at the time of the federal defendants' granting thereof, PPM 20-8 (1969) was in effect and therefore provided the applicable prerequisites for location approval. Lathan v. Brinegar, 506 F.2d 677 (9th Cir. 1974).
 
 
 22
 As such, the district court correctly applied PPM 20-8 (1969), which is "intended to afford full opportunity for effective public participation in the consideration of highway location and design proposals by highway departments before submission to the Federal Highway Administration for approval." PPM 20-8 (1969).
 
 II. THE COMMON FUND/COMMON BENEFIT DOCTRINE
 
 23
 The district court denied attorneys fees under the equitable common fund or common benefit doctrine, ruling the doctrine inapplicable to this case. Plaintiffs have cross-appealed this decision. We affirm the district court ruling.
 
 
 24
 To qualify for an award under the equitable common fund or common benefit doctrine, the successful litigant must either impart a substantial nonmonetary benefit or create or preserve a common fund for an identifiable class of beneficiaries. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The litigant is then entitled to recover attorneys fees from the benefitted class. Without such benefit accruing to or being preserved for an identifiable class, the litigant alone must bear the cost for the enrichment which may flow to others. In Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court acknowledged the viability of this doctrine, but limited its application to only where the class of beneficiaries is sufficiently identifiable, the benefits can be accurately traced, and the fee can be "shifted with some exactitude to those benefitting." Id. at 265 n.39, 95 S.Ct. at 1625 n.39. See also, Stevens v. Municipal Court, 603 F.2d 111 (9th Cir. 1979).
 
 
 25
 Plaintiffs argue that the successful litigation of this case has preserved a common fund, namely the Oregon State Highway Fund ("Fund"). The Fund, supported by state income and gasoline taxes and licensing fees, would have financed the construction of the highway. Absent the favorable ruling by the district court, plaintiffs contend, the Fund would have been depleted for an unlawful use. Instead, the Fund was preserved for lawful uses for an identifiable class of beneficiaries, to wit: the Oregon Transportation Commission, the State of Oregon, and the residents of Oregon. The taxpayers of Oregon will also benefit since every taxpayer has an interest in insuring the lawful expenditure of public funds.
 
 
 26
 Assuming, without deciding, that plaintiffs have sufficiently identified the class of beneficiaries and accurately traced the benefits, they must further demonstrate that the cost can be shifted proportionately and accurately to those who have benefitted.
 
 
 27
 As recognized by the Court in Alyeska, supra, 421 U.S. at 265, n.39, 95 S.Ct. at 1625, n.39, "sophisticated economic analysis would be required to gauge the extent to which the general public, the supposed beneficiary, as distinguished from selected elements of it, would bear the costs." In this case, it would be impossible to determine which beneficiary bears what costs, since residents and taxpayers pay varying amounts into the Fund.
 
 
 28
 Even if this court could somehow determine who would bear the cost, it is inconceivable that the cost could be distributed in proportion to the benefits received. Furthermore, the common fund/common benefit doctrine does not apply when, as here, the class of beneficiaries includes all the citizenry and all the taxpayers of a state. See, Stevens v. Municipal Court, 603 F.2d 111 (9th Cir. 1979).
 
 
 29
 III. THE CIVIL RIGHTS ATTORNEYS FEES ACT, 42 U.S.C. § 1988
 
 
 30
 Defendants challenge the district court's award of attorneys fees under 42 U.S.C. § 1988.[8] Defendants' contentions raise the following issues: (1) Whether 42 U.S.C. § 1988 authorizes an award of attorneys fees in an action based upon a statutory, nonconstitutional claim, and (2) whether the Eleventh Amendment bars recovery of attorneys fees.
 
 
 31
 A. 42 U.S.C. § 1988 AUTHORIZES AN AWARD OF ATTORNEYS FEES IN AN ACTION BASED UPON A STATUTORY, NONCONSTITUTIONAL CLAIM.
 
 
 32
 Since the district court's award of attorneys fees herein, the Supreme Court has addressed this issue in Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The Supreme Court held that claims based on purely statutory violations of federal law could be brought as a § 1983 cause of action. The court further held that § 1988 authorizes an award of attorneys fees in such a case. The court arrived at these conclusions by looking to the plain language of the statutes.
 
 
 33
 Section 1983 provides liability for "... the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ..." (Emphasis added.) Section 1988 provides discretionary attorneys fees "(i)n any action or proceeding to enforce a provision of sections... 1983..." (Emphasis added.)
 
 
 34
 Maine involved a § 1983 claim challenging a state's practice as being violative of the Social Security Act. Accordingly, § 1988 does authorize an award of attorneys fees in a § 1983 action based upon a statutory, nonconstitutional claim.
 
 
 35
 B. THE ELEVENTH AMENDMENT[9] DOES NOT BAR RECOVERY OF ATTORNEYS FEES.
 
 
 36
 In Maine, supra, the court did not reach the issue of Eleventh Amendment immunity since in that case a state court ordered the award of attorneys fees.
 
 
 37
 On the same day Maine was decided, the Court also handed down the decision in Maher v. Gagne, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), a case originating in a federal district court. Maher involved an attorneys fee award under § 1988 where plaintiff's statutory and constitutional claims were never adjudicated, but rather were resolved by a consent decree. In Maher, while discussing the effect of the Eleventh Amendment upon § 1988, the Supreme Court stated that:
 
 
 38
 ... even if the Eleventh Amendment would otherwise present a barrier to an award of fees against a State, Congress was clearly acting within its power under § 5 of the Fourteenth Amendment in removing that barrier. Under § 5 Congress may pass any legislation that is appropriate to enforce the guarantees of the Fourteenth Amendment. A statute awarding attorney's fees to a person who prevails on a Fourteenth Amendment claim falls within the category of "appropriate" legislation. And clearly Congress was not limited to awarding fees only when a constitutional or civil rights claim is actually decided. We agree with the courts below that Congress was acting within its enforcement power in allowing the award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim or in one in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication.[15]
 
 
 39
 448 U.S. at 132, 100 S.Ct. at 2576.
 
 
 40
 In footnote 15, the Court further explained this substantiality requirement by referring to legislative history:
 
 
 
 [15]
 The legislative history makes it clear that Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which the plaintiff prevailed is one for which fees cannot be awarded under the Act. The Report of the Committee on the Judiciary of the House of Representatives accompanying H. R. 15460, a bill substantially identical to the Senate bill that was finally enacted, stated: "To the extent a plaintiff joins a claim under one of the statutes enumerated in H. R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. Morales v. Haines, 486 F.2d 880 (7th Cir. 1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the nonconstitutional claim is dispositive. Hagans v. Lavine, 415 U.S. 528 (94 S.Ct. 1372, 39 L.Ed.2d 577) (1974). In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, see Hagans v. Lavine, supra; United Mine Workers v. Gibbs, 383 U.S. 715 (86 S.Ct. 1130, 16 L.Ed.2d 218) (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a 'common nucleus of operative fact.' United Mine Workers v. Gibbs, supra, at 725 (86 S.Ct. at 1138)." H.R.Rep.No.94-1558, p.4, n.7 (1976).
 
 
 
 41
 Fn. 15, 448 U.S. at 132-133, 100 S.Ct. at 2576.
 
 
 42
 The district court in the instant action applied this standard set out in Footnote 7 of the House Committee report and found plaintiffs' constitutional claims to be substantial and found that the non-fee claim and the fee claims arise out of a "common nucleus of operative fact." We agree with the district court. The tenth and eleventh causes of action challenged the same hearing procedure as was challenged by the eighth cause of action, as being violative of the equal protection and due process clauses because of inadequate notice and failure to conduct the hearing so as to allow for meaningful public comment. A violation of procedural due process is a distinct possibility whenever a right to a hearing is abrogated by a misapplication or disregard of prescribed procedures. This is especially true when, as here, eminent domain proceedings hinge upon the outcome of a public hearing.
 
 
 43
 IV. CALCULATION OF ATTORNEYS FEES: FEDERAL DEFENDANTS' IMMUNITY
 
 
 44
 The district court held that plaintiffs were entitled to an award of attorneys fees against the state defendants pursuant to 42 U.S.C. § 1988. Since the federal defendants are immune from attorneys fees herein pursuant to 28 U.S.C. § 2412 and since 42 U.S.C. §§ 1983 and 1988 do not apply against the federal defendants, plaintiffs are only entitled to § 1988 fees as against the state defendants and are not entitled to fees for services rendered in plaintiffs' case against the federal defendants. The district court preliminarily determined that of the total amount of time and services rendered by plaintiffs' counsel, 75% thereof was attributable to the suit as against the state defendants.
 
 
 45
 After this determination, the district court proceeded to apply the factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)[10] to adjust the fee award and arrive at the reasonable fee to which plaintiffs are entitled.
 
 
 46
 Plaintiffs contend that the 75% figure is in error. Instead, they contend, plaintiffs should be entitled to 100% of their fees from the state defendants (i. e., including fees for services rendered in their case against the federal defendants).
 
 
 47
 This is not a case of reducing fees by 25%, but rather is a case where plaintiffs are only entitled to fees for their action as against the state defendants. Since plaintiffs are not entitled to fees for their suit against the federal defendants, they cannot recover them from the state defendants.
 
 
 48
 The state defendants also contend that the district court erred in holding that the state defendants would be liable for fees based upon 75% of plaintiffs' counsel's time. They contend that they should not be liable for more than one-half of the total amount of fees.
 
 
 49
 The district court is authorized under the Act to use its discretion in awarding a reasonable attorneys fee to the prevailing party to insure a fair result for both parties. The court, in determining a reasonable attorneys fee, must consider a variety of factors.[11] A fair determination would not be possible under an absolute and simplistic fifty percent (50%) rule.
 
 
 50
 We see no evidence to support a contention that counsel for the prevailing parties spent exactly one-half of their time and services litigating claims against the federal defendants. To adopt this formula in every case would negate the discretionary power granted the district court under the Act.
 
 
 51
 Furthermore, 75% appears to be a very reasonable estimate in light of the circumstances herein. It is the conduct of the state defendants that has been the focus of this litigation (i. e., the hearing held by the state defendants, the commitment of the state defendants to a specific location prior to the hearing, the compliance or noncompliance with PPM 20-8 of the state defendants, etc.). In contrast, the significance of the federal defendants' involvement has basically only been in having granted approval to the state defendants. As such, probably at least 75% of plaintiffs' counsel's preparation dealt with the state defendants, as opposed to the federal defendants.
 
 
 52
 State defendants alternatively appeal the 25% "estimate" used by the court, claiming that a more precise method should have been used. Although it is possible that the court could have found a more precise method of reducing the award, given the intertwining nature of the claims against the federal and state defendants, this court defers to the discretion of the district court and finds the 25% figure to be fair and within the bounds of reasonableness.
 
 V. ADJUSTMENT OF FEES FOR INFLATION
 
 53
 The issue of whether the award of attorney fees should be adjusted to account for inflation was first raised in plaintiffs' post-argument supplemental brief. We therefore decline to consider it. See Ellingson v. Burlington Northern, Inc., 653 F.2d 1327 (9th Cir. 1981).
 
 VI. FEES FOR SERVICES RENDERED ON APPEAL
 
 54
 Plaintiffs pray for costs and attorneys fees expended in making this appeal.
 
 
 55
 42 U.S.C. § 1988 authorizes the grant of attorneys fees for services on appeal. Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Furthermore, attorneys fees may be awarded for time devoted in successfully defending appeals of or challenges to the district court's award of attorneys fees. Stanford Daily v. Zurcher, 64 F.R.D. 680 (N.D.Cal.1974), affirmed, 550 F.2d 464 (9th Cir. 1977), reversed on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).
 
 
 56
 It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.
 
 
 57
 Lund v. Affleck, 587 F.2d 75 at 77 (1st Cir. 1978).
 
 
 58
 Plaintiffs herein are entitled to fees and costs for their successful defense to defendants' appeal. Costs and fees are not recoverable, however, for plaintiffs' unsuccessful appeal of the twenty-five percent (25%) reduction of the initial fee award or their claim of fees under the common fund/common benefit theory.
 
 
 59
 The matter is remanded to the district court to determine the reasonable fee for this appeal.
 
 
 
 *
 The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 23 U.S.C. § 128(a) provides the following:
 Any state highway department which submits plans for a Federal-aid highway project involving the bypassing of, or going through, any city, town, or village, either incorporated, or unincorporated, shall certify to the Secretary that it has had public hearings, or has afforded the opportunity for such hearings and has considered the economic and social effects of such a location, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community. Any State highway department which submits plans for an Interstate System project shall certify to the Secretary that it has had public hearings at a convenient location, or has afforded the opportunity for such hearings, for the purpose of enabling persons in rural areas through or contiguous to whose property the highway will pass to express any objections they may have to the proposed location of such highway. Such certification shall be accompanied by a report which indicates the consideration given to the economic, social, environmental and other effects of the plan or highway location or design and various alternatives which were raised during the hearing or which were otherwise considered.
 
 
 [2]
 PPM 20-8 (1969):
 
 
 [4]
 DEFINITIONS (As used in this PPM)
 a. A "corridor public hearing" is a public hearing that:
 (1) Is held before the route location is approved and before the State highway department is committed to a specific proposal;
 (2) Is held to ensure that an opportunity is afforded for effective participation by interested persons in the process of determining the need for, and the location of, a Federal-aid highway; and
 (3) Provides a public forum that affords a full opportunity for presenting views on each of the proposed alternative highway locations and the social, economic, and environmental effects of those alternate locations.
 
 
 [6]
 HEARING REQUIREMENTS
 a. Both a corridor public hearing and a design public hearing must be held, or an opportunity afforded for those hearings, with respect to each Federal-aid highway project that:
 (1) Is on a new location; or
 (2) Would have a substantially different social, economic or environmental effect; or
 (3) Would essentially change the layout or function of connecting roads or streets.
 
 
 [10]
 LOCATION AND DESIGN APPROVAL
 d. The following requirements apply to the processing of requests for highway location or highway design approval:
 (1) Location approval. The division engineer may approve a route location and authorize design engineering only after the following requirements are met:
 (a) The State highway department has requested route location approval.
 (b) Corridor public hearings required by this PPM have been held, or the opportunity for hearings has been afforded.
 (c) The State highway department has submitted public hearing transcripts and certificates required by section 128, title 23, United States Code.
 (d) The requirements of this PPM and of other applicable laws and regulations.
 
 
 [3]
 The tenth claim alleged that defendants had violated plaintiffs' rights to both substantive and procedural due process under the Fifth and Fourteenth Amendments in selecting the freeway route
 The eleventh claim alleged that the State defendants had chosen the route in question primarily because of the general poverty conditions in the corridor and the consequent unorganized opposition to that route, in violation of the equal protection clause of the Fourteenth Amendment.
 
 
 [4]
 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress.
 
 
 [5]
 42 U.S.C. § 1988 states in relevant part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [6]
 28 U.S.C. § 2412 states in relevant part:
 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official in the United States acting in his official capacity, in any court having jurisdiction of such action.
 
 
 [7]
 See n.2, supra, for relevant portions of PPM 20-8 (1969)
 
 
 [8]
 See n.5, supra
 
 
 [9]
 The Eleventh Amendment to the Constitution provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 [10]
 Some of the factors to be considered in the calculation of attorneys fees are: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment due to acceptance of the case; the customary fee; the contingent or fixed nature of the fee; the time limitations imposed by the client or the case; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature of the professional relationship with the client; and awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974); adopted by this circuit in Kerr v. Screen Guild Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), cert. den., 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976)
 
 
 [11]
 See, n.10, supra