William James FOSTER, Deceased through William James Foster, Jr., Special Administrator for the Estate of Deceased, Plaintiff-Appellant,

v.

Wallace W. TOURTELLOTTE, M.D., Ph.D., Individually and as a Physician in the employ of the Veterans Administration, an Agency of the United States Government, H. Earl Gordon, M.D., Ph.D., Individually and as a physician in the employ of the Veterans Administration, an Agency of the United States Government, and Robert Nimmo, Individually and as Director of the Veterans Administration, an Agency of the United States Government, Defendants-Appellees.

Nos. 82–5415, 82–5694.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1983.

Decided April 26, 1983.

Richard Stanley Scott, Malley, Yelsky, Chernove & Scott, Beverly Hills, Cal., for plaintiff-appellant.

Roger E. West, Asst. U.S. Atty., Los Angeles, Cal., for defendants-appellees.

Before FLETCHER and NELSON, Circuit Judges, and THOMPSON,* District Judge.

PER CURIAM:

Appellant Foster, plaintiff below and now deceased, sued for and was granted a preliminary injunction ordering that the respirator on which he was dependent for life be removed.[1] However, the district court denied Foster's requests for money damages and for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (Supp. IV 1980). Foster appeals only from the decision to deny attorney's fees.

### FACTS AND PROCEDURAL BACKGROUND

Foster was admitted to the Wadsworth Veterans Administration National Center on October 10, 1980. His condition made him dependent on a respirator from October 21, 1980 until his death on November 4, 1981. On September 14, 1981, Foster withdrew his consent for further respiratory treatment effective on September 28, 1981. Foster consistently requested medication to make his death as comfortable as possible. The hospital conceded Foster's mental competence to withdraw consent, but refused to disconnect the respirator and administer the requested medication. The hospital's position was that sedation might hasten Foster's death, making it possibly liable for abetting a suicide. The hospital also expressed its concern for the fact that Foster's wife and at least one of his three children opposed his decision to disconnect the respirator.

\* Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

On September 28, 1981, Foster filed a Complaint and Motion for Preliminary Injunction against his doctor, Dr. Tourtellotte, and the Veterans Administration. He sought damages for each day of unwanted respiration, and an injunction ordering that the respirator be removed and that sedation be administered. Foster's wife and one of his children were allowed to intervene as defendants.

On October 14, 1981, Foster suffered a heart attack that left him in a coma. On October 23, the district court granted the requested injunction on the grounds that Foster's constitutional rights of privacy and dignity were being violated, but stayed the order for fifteen days pending appeal. Foster was pronounced "brain dead" under the California Brain Death Statute on November 4. On November 5, when the court learned no appeal would be taken, the court lifted the stay, ordered the removal of the respirator, and rescinded the order to administer medicine. The respirator was removed November 6, and Foster was pronounced dead under all standards. On May 25, 1982, the district court granted summary judgment for appellants on the question of damages, and denied Foster's motion for attorney's fees.

### ISSUE

Did the district court abuse its discretion in denying Foster's application for attorney's fees under the EAJA?

### DISCUSSION

I. *Standard of Review*

The parties agree that the basic standard to be applied to a denial of attorney's fees is the abuse of discretion standard. *See Knights of the Ku Klux Klan Realm of Louisiana v. East Baton Rouge Parish School Board,* 679 F.2d 64, 68–69 (5th Cir.1982);

1. Foster sued various physicians and administrators and the Veterans Administration. This opinion refers to defendants-appellees collectively as the Government.

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); H.R.Rep. No. 1434, 96th Cong., 2d Sess. 23–24, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5003, 5012–13. The district court's interpretation of the EAJA is, of course, a question of law subject to *de novo* review on appeal.

## II. *The Equal Access to Justice Act*

■ Appellant claims attorney's fees under two provisions of the EAJA.[2] Foster first claims attorney's fees under section 2412(d)(1)(A). That section provides that a court shall award reasonable attorney's fees to a prevailing party in a suit against the United States unless that suit was a tort action, or "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[3] Section 2412(d)(1)(A) applies to Foster's claim because the underlying suit was not a tort action for purposes of the EAJA. The lower court rejected Foster's claim, finding both that the Government's position was substantially justified and that special circumstances made an award unjust. We affirm the denial of attorney's fees on grounds that the Government's position was substantially justified. Because we affirm the finding of substantial justification, we

need not reach the question of special circumstances.

■ Foster also claims attorney's fees under section 2412(b), which states that a court may award attorney's fees against the United States where it would otherwise award them under the common law.[4] The common law allows attorney's fees when one party "has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703, 713–14 (1974).[5] The substantial justification standard was intended to make it easier for the prevailing party to recover attorney's fees than the common law standard under which that party must demonstrate bad faith. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4989–90. Therefore, by affirming the finding that the Government demonstrated substantial justification for its position, we necessarily affirm the finding that Foster failed to demonstrate bad faith.

## III. *The "Substantially Justified" Standard*

■ The legislative history assists us in construing the statutory phrase, "substantially justified." The House Committee on the Judiciary's report on the EAJA states:

**2.** Foster's claim was based on an alleged violation of his right to privacy. The district court properly exercised jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction). A claim of constitutional violation need not be proven to establish jurisdiction; a federal court has jurisdiction over a claim that federal officers violated the Constitution unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939, 943 (1946).

**3.** § 2412(d)(1)(A) provides:
Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position

of the United States was substantially justified or that special circumstances make an award unjust.

**4.** § 2412(b) provides:
Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

**5.** The "common good" and "common benefit" exceptions to the common law presumption against awarding attorney's fees are concededly not applicable here.

The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and in fact, no award will be made.. . .

The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case.

*Id.*

Other Circuits have adopted the reasonableness test. For instance, *S & H Riggers & Erectors, Inc. v. OSHRC,* 672 F.2d 426 (5th Cir.1982), applied this standard to deny an application for attorney's fees where one of the Government's three contentions advanced "a novel but credible extension or interpretation of the law," even though it was inconsistent with existing precedent in the circuit. *Id.* at 431 (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4990). *United States for Heydt v. Citizens State Bank,* 668 F.2d 444 (8th Cir.1982), affirmed a district court's denial of attorney's fees in a case where a taxpayer successfully narrowed an IRS summons because "[t]he district court found that the summons had been issued in good faith and for a proper purpose." *Id.* at 448. In *Donovan v. Dillingham,* 668 F.2d 1196 (11th Cir.1982) *reh'g granted, id.* at 1199, the Eleventh Circuit appears to have applied a reasonableness test. That case denied attorney's fees where another circuit had decided the question adversely to the Government, but at the time of the appeal it was not clear that there was controlling precedent in the circuit. *Id.* at 1199. It appears to us that reasonableness is the correct test for determining whether the Government's position was substantially justified.

## IV. *Application*

The Government argues that it had legitimate defenses to Foster's position. Foster's action was brought under 42 U.S.C. § 1983 (1976), alleging a violation of the right to privacy. But whatever the merits of this theory, no court has yet found an absolute constitutional right to refuse lifesaving medical treatment. *Cf. Rogers v. Okin,* 634 F.2d 650, 653 (1st Cir.1980) (finding a right to refuse antipsychotic medication as part of the "penumbral right to privacy, bodily integrity, or personal security"), *vacated sub nom. Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982).

Even if the right to refuse lifesaving treatment is assumed, the Government legitimately questioned whether it applied in this particular fact situation. Over the long course of his illness, Foster had equivocated on his decision to terminate the respirator. Moreover, his wife and at least one of his children strongly opposed his eventual decision. It was reasonable for the Government to seek a court's guidance in resolving this conflict in the absence of any precedent on the question.[6]

The Government further contends that acquiescing in Foster's decision might render it liable for abetting a suicide. The doctors involved felt that the medication Foster had requested might hasten his death, subjecting them and the hospital to a possible wrongful death action by Foster's relatives, or even to criminal prosecution. The reasonableness of this fear is demonstrated by the local District Attorney's refusal to grant appellants a declination of prosecution. There appears to be neither California nor federal precedent on the question of liability for terminating life-sustaining treatment. Moreover, we have failed to find any decision on liability for

**6.** The presence of this problem distinguishes *Satz v. Perlmutter,* 362 So.2d 160 (Fla.App. 1978), *aff'd,* 379 So.2d 359 (Fla.1980). That case held that the right to refuse treatment is tempered by a number of state interests, including the "[n]eed to protect innocent third parties." *Id.* at 162 (citation omitted). The court in *Satz* noted that petitioner's family members were all in agreement with his decision, and distinguished a case where "the patient by refusing treatment, is said to be abandoning his dependent child." *Id.* (citing *Application of the President and Directors of Georgetown College, Inc.,* 331 F.2d 1000 (D.C. Cir.), *cert. denied,* 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964)).

the administration of a requested medication that could hasten death.

In conclusion, Foster's request for an injunction raised troublesome and disturbing questions in a matter quite literally of life and death. The Government faced a complete absence of helpful precedent in the Supreme Court or the court of appeals on the application of the right to privacy to a patient's desire to terminate life-sustaining treatment. The district court, therefore, did not abuse its discretion in finding the Government substantially justified in defending this case. The decision that Foster was not entitled to attorney's fees under the EAJA is

AFFIRMED.