UNITED STATES of America,
Plaintiff-Appellee,

v.

FIRST NATIONAL BANK OF CIRCLE,
Defendant-Appellant.

No. 83–3507.

United States Court of Appeals,
Ninth Circuit.

Submitted March 5, 1984.
Decided May 9, 1984.

Richard W. Perkins, Stanley S. Shaw, Jr., Dept. of Justice, Washington, D.C., for the U.S.

Thomas E. Towe, Towe, Ball, Enright & Mackey, Billings, Mont., for defendant-appellant.

Before WRIGHT, GOODWIN, and NORRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The First National Bank of Circle sought over $35,000 in attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1980). The district court denied the award because it found the government's position substantially justified. We remand to the district court to specify its basis for finding substantial justification.

PROCEDURAL BACKGROUND

In February 1970, the Fort Belknap Indian Community created a subsidiary corporation, Fort Belknap Builders, Inc. (Builders), to build 50 houses for tribal members under a Department of Housing and Urban Development (HUD) contract. The Bank and its affiliates loaned $350,000 to the Indian Community, of which at least $200,-000 went to Builders for operating capital. This and subsequent loans were secured by proceeds from the HUD contract.

As early as the summer of 1970, Builders experienced financial difficulties. The Bank supplied additional loans and honored overdrafts, amounting to some $600,000. Builders ceased operations in November 1971.

Through its account at the Bank, Builders had paid over $300,000 in wages. In its

last five quarters, Builders paid no payroll taxes on these wages.

In July 1974, the government sued the Bank under § 3505(b) of the Internal Revenue Code, 26 U.S.C. § 3505(b) (1976). This imposes liability for federal withholding taxes upon lenders who supply funds for paying wages "with actual notice or knowledge ... that [the] employer does not intend to or will not be able to make timely payment or deposit" of withheld income and FICA taxes. *Id.*

The extent to which the Bank was involved with Builders' operations is unclear. The Bank claims that Builders officials, including its chief executive officer, Steve Long, intentionally avoided paying the taxes. It says that checks were made out but not sent, checks were sent to the I.R.S. when there were no funds to cover them, and tax returns were prepared but not mailed. According to the Bank, Long assumed that the government would not sue an Indian corporation.

Builders officials contend that Bank officials controlled Builders' finances, including payments to creditors and the I.R.S. They argue that the Bank simply did not process or honor checks for taxes. The Bank officers denied such knowledge and control.

In 1976, the Bank won summary judgment on the ground that its loans to Builders were working capital loans. We reversed and remanded. 556 F.2d 589 (9th Cir.1977).

On the first day of trial in April 1978, Judge Battin again granted summary judgment for the Bank because it had not been a supplier of funds under the statute. He held that it was only an agent for affiliates that had supplied funds, and its temporary honoring of overdrafts did not constitute supplying funds. Again we reversed and remanded, and set out factual issues to be resolved at trial. 652 F.2d 882, 887–89 (9th Cir.1981).

After a four-day trial in 1982, the jury found for the Bank. The government's motions for judgment n.o.v. or new trial were denied.

The Bank applied for an award of costs and attorney fees totalling $35,982.57. The clerk allowed only court costs and some witness fees totalling $2444.14. The court approved the award and the Bank appeals.

## ANALYSIS

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1980). It is not disputed that the Bank prevailed in this case.

### I. *Discretion Under the EAJA*

The Bank argues that the decision whether to award attorney fees under the EAJA does not involve judicial discretion. This flies in the face of well-established precedent. We have held that the district court's decision on fees will be reversed only for abuse of discretion. *See, e.g., Rawlings v. Heckler,* 725 F.2d 1192 at 1193, 1194 (9th Cir.1984); *Southern Oregon Citizens Against Toxic Sprays, Inc. v. Clark,* 720 F.2d 1475, 1481 (9th Cir.1983); *United States v. 101.80 Acres of Land, More or Less, in Idaho County, Idaho,* 716 F.2d 714, 728 (9th Cir.1983); *Hoang Ha v. Schweiker,* 707 F.2d 1104, 1105 (9th Cir. 1983); *Foster v. Tourtellotte,* 704 F.2d 1109, 1110 (9th Cir.1983).

The Bank argues that use of the word "shall" in § 2412(d)(1)(A), as contrasted with use of the word "may" in § 2412(b) (allowing fee awards against the United States to the same extent that any other party would be liable under the common law), indicates that § 2412(d)(1)(A) does not call for judicial discretion. It is the government's burden, says the Bank, to establish the "defenses" of substantial justification or special circumstances, leaving no room for discretion by the court.

This argument misplaces the source of judicial discretion. The court exercises discretion in determining whether "substantial justification" or "special circumstances" exist. If not, it "shall" award fees.

The Bank correctly argues that the "shall ... unless" language creates a presumption of a fee award. It does not, however, detract from the court's duty to use discretion in evaluating the criteria in the clause following "unless."

II. *Substantial Justification and Special Circumstances*

The district court held that the Bank was not entitled to fees "on the basis that the legal position of [the United States] was defensible, asserted in good faith, and substantially justified within the meaning of the law."

This conclusion invokes the substantial justification exception to the Act's provision for attorney fees. To determine whether the conclusion was an abuse of discretion, this court needs to know the basis for finding the exception.

The district judge's finding shows only his conclusion. That he had almost ten years of familiarity with the case does not tell how the government's position was substantially justified. The judge must show us that he has considered the several factors relevant to his conclusion.

■ The test for substantial justification is one of reasonableness. The government has the burden to show "that its case had a reasonable basis both in law and in fact." *Southern Oregon Citizens*, 720 F.2d at 1481; *Hoang Ha*, 707 F.2d at 1106; H.Rep. No. 96–1418, 96th Cong., 2d Sess. 10–11 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4989.

■ That the government lost does not raise a presumption that its position was not substantially justified. *Foster v. Tourtellotte*, 704 F.2d at 1112. It need not even show that it had a substantial likelihood of prevailing. 1980 U.S.Cong. & Ad. News at 4990. On the other hand, that this court twice reversed adverse summary judgment rulings because genuine issues

of material fact existed does not compel a conclusion that the government's case was substantially justified.

■ In light of the several proceedings below, both before and after appellate review, we need to know on what basis the judge concluded that the government and its counsel acted reasonably. The parties have now aided the trial judge by stating a number of substantive claims and responses in this appeal.

Specifically, the Bank claims that the government's position was not substantially justified because it was based entirely on the self-serving testimony of Builders officer Long, who escaped personal liability under 26 U.S.C. § 6672 by asserting that the Bank controlled Builders' funds and prevented Long from paying the taxes. This is inadequate, the Bank argues, for several reasons.

First, Builders had other sources of funds unrelated to the Bank. Even if this is true, it does not necessarily affect the Bank's liability. The Bank could have advanced funds for wages with knowledge that withholding taxes could not or would not be paid from these other sources. There is no evidence that these other funds were available for payroll taxes. Bank officer Jacobson conceded that Builders' income from sources other than the HUD contract assigned to the Bank was insignificant. In any event, the existence of any outside funds does not undermine the reasonableness of the government's position, which was based on evidence of the Bank's involvement.

Second, the Bank faults the government for accepting Long's statements without investigating the Bank's explanation. Government evidence shows, however, that an investigator did visit the Bank and meet with its attorney. Any failure to speak with Bank president Towe does not diminish the reasonableness of the government's case because the result would have been a contrast of Long's word against Towe's. Indeed, contradictions in their testimony

could indicate some reasonableness in pursuing the matter.

Third, the Bank says that Long and Carmelita Thompson, the government's chief witnesses, gave unsupportive testimony that made it unreasonable for the government to press its case. Their testimony, however, is consistent with the government's position that the Bank had substantial control of Builders' financial activities.

In sum, the government may have acted reasonably, and the district judge may have been correct in concluding that the government's position was substantially justified. However, we can review his exercise of discretion only by evaluating what he considered, not what the parties tell us.

■ In addition to invoking the substantial justification exception, the trial judge may have considered the special circumstances exception in his reference to the government's good faith. As with substantial justification, we need to know the basis for any finding of special circumstances.

Here, the trial court may have considered, for example, whether counsel's attitude and approach to the issues were inappropriate, and whether counsel for the bank unnecessarily protracted the proceedings by unwarranted discovery or other unprofessional delay, as well as whether government counsel's attitude was helpful to the court.

Without implying that we disagree with the judge's conclusion, we remand this case for him to articulate his reasons for denying attorney fees under the EAJA. *See Wolverton v. Heckler,* 726 F.2d 580 at 583 (9th Cir.1984) (remanded for substantial justification findings).

III. *Effective Date of EAJA*

■ The government argues that, even if its position was not substantially justified, it would not have to pay attorney fees incurred before the effective date of the Act. We recently rejected this argument in *Rawlings v. Heckler,* 725 F.2d 1192 (9th Cir.1984). "[T]he plain meaning of the statute allows for recovery of fees incurred prior to October 1, 1981, as long as the action was pending on that date. Had Congress intended no reimbursement for fees incurred prior to October 1, 1981, it could easily have so stated." *Id.* at 1194.

IV. *Fees Under the Allen Amendment*

The Bank claims that, regardless of whether it is entitled to fees under the EAJA, it deserves an award under the Allen Amendment for fees incurred prior to October 1, 1981.

The Civil Rights Attorneys Fees Act of 1976, called the Allen Amendment by these parties, gave courts the discretion to award fees to prevailing parties other than the United States in civil actions by the government under civil rights laws and the Internal Revenue Code. 42 U.S.C. § 1988 (1976). The portion of the Allen Amendment that referred to tax actions was repealed when the EAJA took effect on October 1, 1981. Pub.L. No. 96–481, § 205(c), 94 Stat. 2321 (1980).

■ The prevailing taxpayer must establish some degree of vexatiousness, frivolousness, or bad faith to win fees under the Allen Amendment. *See, e.g., Klotz v. United States,* 602 F.2d 920, 924 (9th Cir. 1979).

■ The EAJA provides a more liberal standard for attorney fees than does the Allen Amendment. If the position of the government is shown to be substantially justified on remand, we may not find bad faith or vexatiousness. *Foster v. Tourtellotte,* 704 F.2d at 1111. If the position was not substantially justified, the Bank is entitled to fees under the EAJA and the Allen Amendment has no relevance.

CONCLUSION

The judgment is vacated and remanded to the district court for proceedings consistent with this opinion. Further proceedings before this court will be referred to this panel.

NORRIS, Circuit Judge, concurring:

While I concur in the result reached by the majority, I write separately in order to make three points.

First, I believe that the majority's discussion of the Bank's attack on the district court's substantial justification determination, *see supra* at 1447–1448, is inappropriate. Because we remand to the district court for an explanation of this determination, the arguments raised by the Bank are not before us and any discussion of them amounts to an advisory opinion.

Second, I am troubled by the majority's discussion of the factors the district court may consider in determining whether this case falls within the "special circumstances" exception to section 204(d)(1)(A) of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). To begin with, the majority indicates that the district court may take into account the behavior of the government attorney, as well as that of private counsel. The "special circumstances" exception, however, requires that the district court determine whether extraordinary circumstances exist such that attorneys' fees should *not* be awarded. I do not see how the actions of the government are in any way relevant to this inquiry. In addition, the standards which the majority states should guide the district court's evaluation of counsels' actions are vague to the point of meaninglessness. The majority indicates that the district court may consider "whether counsel's attitude and approach to the issues were inappropriate" and "whether government counsel's attitude was helpful to the court." *Supra* at 1448. These standards are so wholly subjective that they afford no guidance to the district court or the litigants.

Third and most important, I write separately to point out what I believe may be an error in Ninth Circuit law. The majority accurately states that under Ninth Circuit precedent, a district judge may exercise his discretion in determining whether attorneys' fees should or should not be awarded under section 204(d)(1)(A) of the EAJA, 28 U.S.C. § 2412(d)(1)(A), and that consequently his decision is reviewed under the abuse of discretion standard. *See, e.g., Hoang Ha v. Schweiker,* 707 F.2d 1104, 1105 (9th Cir.1983). I believe, however, that our Ninth Circuit cases are suspect on this issue.

Our circuit first applied the abuse of discretion standard to a district judge's attorneys' fees ruling under section 204(d)(1)(A) in *Foster v. Tourtellotte,* 704 F.2d 1109, 1110–11 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983). In adopting the abuse of discretion standard, the court relied on the agreement of the parties without critical analysis. *Id.* at 1110. The court did, however, cite some authority in support of its application of the standard.

*Foster* first of all relies on our decision in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975), *cert.* denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In *Kerr,* however, the award of attorneys' fees under review was made pursuant to section 102 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 412. The relevant portion of section 102, *see Kerr v. Screen Extras Guild, Inc.,* 466 F.2d 1267 (9th Cir.1972), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973), provides that the district court may grant "such relief (including injunctions) as may be appropriate." This language provides clear room for the exercise of judicial discretion. An award of attorneys' fees is never mandatory. The district court simply *may* award them if it deems such action appropriate.

The language of section 204(d)(1)(A) of the EAJA is quite different. The provision states:

> [A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust.

In this passage, the operative phrases are "shall," "substantially justified," and "special circumstances." "Shall," in contrast to "may," is clearly not a discretionary term. It indicates that under section 204(d)(1)(A), a district judge *must* award attorneys' fees when the requisite conditions are met.[1] Today's majority appears to concede this point. The discretionary element in section 204(d)(1)(A), it argues, is contained in the phrases "substantially justified" and "special circumstances." *See supra* at 1446. This contention, however, misconceives the nature of these terms. While the precise meaning of "substantially justified" and "special circumstances" may not yet be clear, because the EAJA is of relatively recent origin and the courts have not had a sufficient opportunity to apply a judicial gloss to the statute, these phrases are nonetheless legal standards with specific content. As such, they are indistinguishable from other legal terms of art, such as "exigent circumstances," "probable cause," and "good faith." These standards have never been interpreted to allow for the exercise of judicial discretion, and decisions applying them have never been subjected to abuse of discretion review. I know of no reason why the requirements of section 204(d)(1)(A) should be treated in a different manner. In a given case, the government's position is either substantially justified or it is not. There is no middle ground. Thus, *Kerr v. Screen Extras Guild, Inc.*, and its analysis of the appropriate standard of review for attorneys' fees decisions under the LMRDA, provides us no guidance in determining the correct standard of review for decisions made pursuant to section 204(d)(1)(A).

Second, *Foster* cites the Fifth Circuit's decision in *Knights of the Ku Klux Klan Realm of Louisiana v. East Baton Rouge Parish School Board,* 679 F.2d 64, 68–69 (5th Cir.1982). The Fifth Circuit decision does adopt an abuse of discretion standard. It does so, however, without analysis, relying entirely on an inaccurate citation to the EAJA's legislative history. *Id.* at 69. The decision cites a passage in the House Conference Report which states:

> A party dissatisfied with a fee award or a denial of an award may petition the Federal Court for leave to appeal. If the petition is granted, the court may modify the award only if the failure to make the award, or the calculation of the amount of the award was an abuse of discretion.

H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23–24, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5003, 5012–13. While the passage in question clearly provides for an abuse of discretion standard, it does not concern the relevant section of the EAJA. The passage appears under the heading "Agency Actions—Appeal of a Denial of Fee Award" and concerns awards of attorneys' fees made under 5 U.S.C. § 504(a)(1), a provision of the EAJA dealing with fees awarded for representation in agency proceedings.[2] The House Conference Report does not contain a comparable section dealing with the appropriate standard of review for awards made pursuant to section 204(d)(1)(A). Thus, the Fifth Circuit decision is of suspect validity [3] and provides a dubious justification for *Foster*'s adoption of the abuse of discretion standard.

Finally, *Foster* relies on the same inapplicable portion of the EAJA's legislative history that is cited in the Fifth Circuit's *Knights of the Ku Klux Klan* decision. The citation is no more persuasive here than it was in the Fifth Circuit decision.

In sum, I must agree with the District of Columbia Circuit in its recent criticism of

---

1. The authors of the EAJA were clearly aware of this distinction. This is convincingly demonstrated by the fact that in section 204(a), 28 U.S.C. § 2412(a), where they apparently intended to permit the exercise of discretion, the term used is "may."

2. It should also be noted that the portion of the legislative history relied upon by the Fifth Circuit is contradicted by other passages in the legislative history. *See* House Report No. 1418, 96th Cong., 2d Sess. 14, *reprinted in* 1980 U.S.

Code Cong. & Ad.News 4992–93 ("A purely discretionary standard was also considered. A discretionary standard, however, fails to account for the natural reluctance of agencies to award fees against themselves and also offers little direction to the exercise of agency discretion.").

3. For the views of the District of Columbia Circuit on *Knights of the Ku Klux Klan,* see *infra* at page 1451.

both *Knights of the Ku Klux Klan* and *Foster:*

> Several recent appellate opinions contain suggestions or assumptions regarding the standard of review that should apply to cases of this sort. Unfortunately, ... none is sufficiently well reasoned to be capable of providing us much guidance.

> The earliest of these suggestions appears in *Knights of Ku Klux Klan v. East Baton Rouge Parish School Bd.,* 679 F.2d 64 (5th Cir. Unit A 1982). In remanding a case to district court for reconsideration, in light of the Act, of a prevailing party's entitlement to attorneys' fees, the Fifth Circuit there opined that "the basic role of this Court is merely to review a fee award or denial of an award under the EAJA, modifying it only if the failure to make the award, or the calculation of the amount of the award, was an abuse of discretion." *Id.* at 68–69. It seems clear, however, that the issue of the proper standard of review had not been briefed, and resolution of the question certainly was not essential to the court's decision.

> .     .     .

> [I]n two cases decided in the last two months, the Ninth Circuit devoted only cursory attention to the question of the proper standard of review. In *Foster v. Tourtellotte,* 704 F.2d 1109, 1110–11 (9th Cir.1983), "[t]he parties agree[d] that the basic standard to be applied to a denial of attorney's fees is the abuse of discretion standard," and the court (citing *KKK v. Baton Rouge School Bd.* ... and misciting H.R.Rep. No. 1434 ...) declined to subject that agreement to critical scrutiny.

*Spencer v. NLRB,* 712 F.2d 539, 561–62 n. 80 (D.C.Cir.1983).[4] I thus conclude that *Foster* rests on authorities which are either inapplicable or inaccurate, and that consequently its adoption of an abuse of discretion standard should be reexamined.

It is unnecessary at this time to determine the appropriate standard of review for district court decisions under section 204(d)(1)(A) of the EAJA. It is clear, however, that to the extent factual determinations are implicated the standard should be clearly erroneous, to the extent legal determinations are implicated review should be de novo, and to the extent mixed questions are implicated the analysis set forth in *United States v. McConney,* 728 F.2d 1195 (9th Cir.1984) (en banc), provides guidance.

---

**4.** *Spencer* does ultimately adopt an abuse of discretion standard. It, however, uses the phrase abuse of discretion in a "special" manner. 712 F.2d 539, 565 (D.C.Cir.1983). By abuse of discretion, it means highly deferential review of the district court's evaluation of the probative force of evidence and close scrutiny of the district court's evaluation of the force or weight of legal arguments. *Id.* at 563–65. Whatever the merits of this position, I do not believe that this use of the abuse of discretion standard accords with our use. *See, e.g., Southern Oregon Citizens Against Toxic Sprays, Inc. v. Clark,* 720 F.2d 1475, 1481 (9th Cir.1983).