**Odell KOMINERS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 487–81C.

United States Claims Court.

March 27, 1986.

Stephen T. Owen, Washington, D.C., for plaintiff. Vicki J. Shteir-Dunn, of counsel.

Mary Mitchelson, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, for defendant.

## OPINION

### MOODY R. TIDWELL, III, Judge:

Plaintiff prevailed in his suit seeking an annuity increase under Title II of the Social Security Act. 5 U.S.C. § 8345(f)(3) (1982). *See Kominers v. United States*, 3 Cl.Ct. 684 (1983). Plaintiff now seeks attorneys fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(a) and (b) (1982). Defendant takes the position that plaintiff is entitled to neither costs, fees nor expenses. Plaintiff also sought reconsideration of the denial of class action certification by Judge Lydon prior to reassignment of the case to Judge Tidwell on June 14, 1983. The class action issue was reconsidered and confirmed. It is not part of the present suit for attorneys fees and costs inasmuch as plaintiff did not prevail on that issue, a prerequisite to the award of attorneys fees, expenses and costs. 28 U.S.C. § 2412(a) and (b) (1982).

## FACTS

Plaintiff is a retired former employee of the federal government whose total service amounted to five years, four months and ten days. Thirty years after his last day of federal service, plaintiff applied on June 23, 1975, with the Civil Service Commission (CSC), now the Office of Personnel Management (OPM) for an annuity. CSC had advised plaintiff that based upon his length of service and average salary he was entitled to an annuity of $36 a month beginning August 26, 1975. Two months later, on October 8, 1975, plaintiff was told by the CSC that because his gross monthly Civil Service annuity was less than the current smallest primary insurance amount payable by the Social Security Administra-

tion, his annuity would be increased. 5 U.S.C. § 8345(f) (1982). On October 28, 1975, the CSC raised his monthly annuity from $36 to $102, plus a retroactive one-time payment covering the period when he should have received $102 per month.

In mid–1979 OPM was advised by the Social Security Administration that plaintiff was entitled to receive benefits under Title II of the Social Security Act, even though he was not receiving them and could not because of his income level. Therefore, under the law, plaintiff was entitled only to the minimum Civil Service annuity. OPM accordingly informed plaintiff that his payments would be reduced to the amount actually earned by his length of service and average salary and that he was liable for the overpayments made to him over the past several years in the amount of $1,019. The collection action was dropped at a later date.[1]

In response to plaintiff's letters and appeals, OPM told him that there had always been a prohibition against payment of the smallest primary insurance amount to those annuitants who were "entitled to receive certain benefits," which plaintiff was, even though he was not receiving them. The letter continued:

> In our efforts to simplify the language so that it would be understandable to the individuals destined to receive it, we unfortunately left off the language concerning those annuitants 'entitled to receive' the disqualifying benefits.

The course of events outlined above is best explained in footnote 4 of Defendant's Opposition to Plaintiff's Petition for Award of Costs, Fees and Expenses Pursuant to the Equal Access to Justice Act, to wit:

> Mr. Kominers did not begin to receive overpayments until August 1, 1978, the month in which he reached 65 years of age and became eligible for hospital insurance benefits (Medicare). 42 U.S.C. § 426(a)(1). Mr. Kominers' eligibility for

---

[1]. In fact, defendant had "overpaid" at least 2,000 individuals in circumstances like plaintiff

in this case.

Medicare necessitated a finding by the Social Security Administration that he was *entitled to receive* benefits under Title II of the Social Security Act. 42 U.S.C. § 426(a)(2)." (Emphasis in original.)

Plaintiff filed his petition in this court on January 9, 1984 accompanied by a Motion for Issuance of Notice of Class Action and a Motion for Waiver of Filing Fees as to Unknown Class Members. Plaintiff's efforts to create a class action were denied by the court on five separate occasions.

Following enactment of the 1980 amendments to the Social Security Act, defendant argued that the amendments retroactively provided for a separate medicare application permitting plaintiff's 1977 Social Security Application to be considered for Medicare benefits only, nullifying his entitlement to Title II benefits. According to defendant, after extensive inquiries with the Social Security Administration, it discovered that the 1980 amendments did, in fact, provide a mechanism whereby plaintiff might have been able to void the pre–1980 application for Title II benefits, but the nullification, if possible had to be ac-complished by an affirmative action, it was not automatic. Plaintiff did not attempt voidance of his entitlement to Title II benefits by taking advantage of the 1980 amendments to the Social Security Act and is in the same position now as though the 1980 amendments were never enacted.

Notwithstanding the foregoing, defendant decided not to argue that plaintiff was ineligible to request relief under the 1980 amendments. Instead, defendant would offer plaintiff the difference between what he would have received under the smallest primary insurance amount and his actual CSC retirement annuity. Defendant confessed judgment in the full amount of plaintiff's claim at the opening of the hearing on the Motion for Summary Judgment. The parties thereafter stipulated that plaintiff would receive the amount of $5,118. The court entered judgment in that amount on November 25, 1983.

## DISCUSSION

In calculating its claim for fees, costs and expenses, plaintiff stated as follows:

COSTS

| | | |
|---|---|---|
| Filing Fee | $ | 10.00 |
| Duplicating | | 597.00 |
| Deposition Costs and Witness Fees | | 334.00 |
| Word Processing and Printing Costs | | 2,048.20 |
| TOTAL | $ | 2,989.20 |

EXPENSES

| | | |
|---|---|---|
| Long Distance Communication | $ | 15.04 |
| Metro Messenger and Cab Fares | | 53.83 |
| TOTAL | $ | 68.87 |

ATTORNEY FEES

Stephen T. Owen
103.50 hours at $75/hour ..... $ 7,762.50
Vicki J. Shteir-Dunn
58.50 hours at $60/hour ..... 3,570.00

|  | TOTAL | $11,332.50 |
|---|---|---|
| | GRAND TOTAL | $14,390.57 |

Plaintiff, Odell Kominers, is a successful Washington, D.C. attorney and a name partner in the law firm of Kominers, Fort, Schlefer and Boyer. The two attorneys who represented plaintiff in this undertaking, according to the court's understanding, were employed in plaintiff's firm. Plaintiff alleged that defendant acted vexatiously and oppressively throughout the administrative part of this case and the judicial proceedings. For example, plaintiff stated that he dealt with OPM for over two years

to try to persuade it that the annuity reduction was improper, to no avail. Plaintiff eventually filed suit in 1981 and at the proper time initiated discovery. The court granted defendant's request for a five-month stay pending completion of a similar case currently before the Merit Systems Protection Board (MSPB).[2] It was believed that the decision in the MSPB case could give guidance to this court. The court did order, however, that discovery deemed "absolutely necessary" should continue.[3] On May 25, 1982, plaintiff filed a motion to compel production of documents previously requested in October, 1981. The motion to compel was granted in June 1982, but defendant did not complete its discovery responses until September 1982, 11 months after filing of the request. Briefs were then exchanged as per the rules governing motions for summary judgment. RUSCC 56. On August 24, 1983, defendant confessed judgment.

Plaintiff, who prevailed by virtue of defendant's confession of judgment now seeks attorneys fees, expenses and costs. Plaintiff cites *McQuiston v. Marsh*, 707 F.2d 1082, 1086 (9th Cir.1983), for the proposition that "[a] court may award attorneys fees if one party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." In view thereof, plaintiff avers that attorneys fees should be allowed covering the claimed costs of both of his attorneys, especially since plaintiff is asking for only a fraction of the time they spent and their normal hourly charges on the annuity case and nothing for the hours spent on the class action aspect of the case.[4]

Defendant argued strongly that the United States Claims Court did not have jurisdiction to award costs, fees and expenses in cases which the Complaint was filed before October 1, 1982. We will dispose of this argument in favor of the United States

Claims Court. The United States Court of Appeals for the Federal Circuit, held in *Essex Electro Engineers, Inc. v. United States*, 757 F.2d 247, 249 (Fed.Cir.1985), that the United States Claims Court does possess proper jurisdiction to award attorneys fees and expenses for cases filed after October 1, 1982. As to those cases filed before October 1, 1982 the same court held in *Ellis v. United States*, 711 F.2d 1571, 1574 (Fed.Cir.1983) that the United States Claims Court inherited the requisite power to award fees under the EAJA in cases filed before October 1, 1982 and then subsequently carried over by statute to the United States Claims Court and decided by that court after October 1, 1982. Which is the case here.

Section 2412(a) of title 28 of the U.S.C. provides that costs may be awarded to the prevailing party in any civil litigation, pursuant to 28 U.S.C. § 1920. See also RUSCC Appendix I. Section 2412(b) of title 28 allows the payment of reasonable attorneys' fees and expenses of attorneys to the prevailing party in any civil action. "The United States shall be liable for such fees and expenses to the same extent that as any other party would be liable under the common law...." 28 U.S.C. § 2412(b).

Plaintiffs' claim for attorneys fees and expenses relies principally on his attorney's actions in this court and less on the time and money plaintiff spent himself in attempting to have CSC/OPM/SSA reinstate him to the roles of those former government employees entitled to the smallest primary insurance amount. Accordingly, the court will look to the actions of defendant during the period plaintiffs' case was in this court for purposes of determining whether an EAJA award is proper. *Greenberg v. United States*, 1 Cl.Ct. 406, 408 (1983); *Broad Avenue Laundry & Tailor-*

---

**2.** *Fregosi v. OPM*, MSPB No. NY03811101161. Defendant contends that the *Fregosi* decision, issued May 6, 1982, supported its position.

**3.** The stay was actually only four months in duration because the MSPB ruled earlier than the parties anticipated. The MSPB decision was of no aid to the court.

**4.** Mr. Owen normally billed at $125–150 an hour and Ms. Shteir-Dunn at $80 an hour. The text, *supra,* indicates that Mr. Owen in this case charged $75 per hour and Ms. Shteir-Dunn, $60.

*ing v. United States,* 693 F.2d 1387, 1390 (Fed.Cir.1982).

 The court finds that defendant did not act in bad faith, vexatiously, wantonly or for oppressive reasons, as argued by plaintiffs. *McQuiston v. Marsh,* 707 F.2d 1082, 1086 (9th Cir.1983). Attorneys' fees are reasonable under several possible theories but only one fits this case; the common law theory, 28 U.S.C. § 2412(b), that if one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons fees are recoverable. *Foster v. Tourtellotte,* 704 F.2d 1109 (9th Cir.1983).[5] Bad faith may be found either in the action that led to the lawsuit or in the conduct of the litigation. *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973). The question of bad faith is an issue of fact vis-a-vis the deportment of the government both before and during the course of this litigation, which is to be decided by the trial court. *McQuiston v. Marsh,* 707 F.2d 1082, 1086 (9th Cir.1983).

 The court is of the opinion that defendant may not have acted wisely nor with great concern over plaintiffs' claim before the present suit was filed, but plaintiff has failed to show that defendant acted in bad faith. It must have been frustrating at times to plaintiff but the court cannot equate frustration with bad faith, vexatious treatment, wantonness or oppressiveness.

After the suit was filed the government continued to maintain its original position, but it must be kept in mind that much time and effort was spent in the early days of the suit by both parties on the class action count. The court is satisfied that defendant acted reasonably and decently after defendant became fully aware of the ramifications of the annuity count. It reasonably and promptly conceded its position and allowed plaintiff all that was asked for under the annuity count. Plaintiff was returned to the roles of those eligible to receive the smallest primary insurance

amount and given an amount equal to what he should have received over the years from mid–1979 until settlement of this case. Under the circumstances defendant cannot be found guilty of exercising bad faith so as to justify an award of attorneys' fees and expenses.

 As to costs; an award is not dependent under 28 U.S.C. § 2412(a) for a finding that the non-prevailing party's position was unreasonable or not substantially justified. This court has routinely awarded costs, *Bailey v. United States,* 1 Cl.Ct. 69, 77 (1983); *Engels v. United States,* 2 Cl.Ct. 166, 167 (1983), and there is no reason why they should not be awarded in this instance.

### CONCLUSION

The petition for attorneys' fees and expenses is denied and the petition for costs is allowed. The clerk is directed to tax all proper costs as recited in the Petition.

---

**5.** The common law exception to the American rule against fee shifting applies when a litigant has behaved in bad faith, vexatiously, wantonly or for oppressive reasons. *McCarthy v. United States,* 1 Cl.Ct. 446 (1983).