794 F.2d 1474
 122 L.R.R.M. (BNA) 3193, 104 Lab.Cas. P 11,935
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
IRONWORKERS LOCAL UNION NO. 505, Affiliated with
International Association of Bridge, Structural,
and Ornamental Reinforced Ironworkers,
AFL-CIO, Respondent.
 No. 85-7618.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 3, 1986.
Decided July 24, 1986.
 
 John Burgoyne, Washington, D.C., for petitioner.
 Cheryl French, Hafer, Price, Reinhart & Schwerin, Seattle, Wash., for respondent.
 On Application for Enforcement of an Order of the National Labor Relations Board.
 Before WRIGHT, SNEED and SCHROEDER, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 The National Labor Relations Board seeks enforcement of its order finding that the Ironworkers Local Union No. 505 committed an unfair labor practice, in violation of 29 U.S.C. Sec. 158(b)(1)(A), in connection with its operation of a hiring hall. We grant the Board's application for enforcement.
 
 I.
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Pursuant to a collective bargaining agreement, the Ironworkers Local Union No. 505 (the Union) operated a hiring hall for Snelson-Anvil (the employer), a construction and fabrication company. The agreement stated that the Union was the first source of qualified ironworkers, and it gave the Union the exclusive right to refer ironworkers to the employer for 48 hours after a request for applicants. It did not specify the Union's referral procedures.
 
 
 3
 The Union posted in its hiring hall a short document entitled "Referral Procedures, Iron Workers [sic] Local 505." See 3 Transcript of Record (T.R.) exhibit 2. According to the document, the employer could "employ directly a minimum number of key employees" and could "call back two men within a six (6) month period following a job." Id. exhibit 2, at 1. The employer was required to hire other workers by calling the Union. The document further provided that workers using the hiring hall would be divided into three groups, denominated A, B, and C. The Union maintained lists for each of these groups, and job applicants were supposed to re-register their names and phone numbers on the list on the first of each month. According to the rules, referrals were to be made from those lists--with group A having priority over group B, group B having priority over group C, and applicants first on each list having priority over those whose names came later. Applicants referred to the employer but rejected before the expiration of 5 days were returned to their previous position on the list. The general practice was for the Union dispatcher, using the lists, to call applicants at their homes to inform them of specific referrals.
 
 
 4
 At the time the instant dispute arose and for the preceding three years, the Union had an unwritten exception to these posted rules in the case of recalls by employers following layoffs. In the event of such a "call-back" (as distinguished from an "initial hire"), the lists were initially disregarded and priority was given to those who were physically present in the hiring hall at the time an employer sought workers. Pursuant to this unposted policy, two applicants--Tom Sturdevant and Amadeo Nappi--were twice passed over for call-back referrals in favor of applicants who were lower on the lists but were present in the hiring hall when the jobs opened up. Sturdevant and Nappi were not members of the local and previously had not been informed about the call-back exception. Eventually, however, the Union's dispatcher explained the exception. Soon thereafter, Nappi and Sturdevant were dispatched to the employer.
 
 
 5
 Sturdevant filed an unfair labor practice charge with the NLRB shortly after learning that he had been passed over pursuant to the unposted call-back policy. The Board issued a complaint against the Union and the case was brought before an administrative law judge (ALJ). The parties stipulated to the facts as recited above and agreed, in addition, that the NLRB had "no evidence to support an allegation of animus of any sort against either Mr. Sturdevant or Mr. Nappi." No testimony was given at the hearing.
 
 
 6
 The ALJ found in favor of the Union. See Respondent's Excerpt of Record (E.R.) at 1-11. He construed the NLRB's complaint as raising only the "duty of fair representation" prong of 29 U.S.C. Sec. 158(b)(1)(A) and not the "discrimination against employees for their exercise of guaranteed rights" prong. Id. at 5-6. He determined that call-backs of more than two employees were not specifically covered by the posted referral rules and that the unwritten call-back exception was a longstanding supplementary policy. Moreover, he found, the exception was not a secret and was administered in an evenhanded manner. Id. at 9-10. He further held that the criterion of physical presence in the hiring hall was objective in that it indicated an applicant's current interest in obtaining employment. Id. at 10.
 
 
 7
 The General Counsel filed exceptions both to the ALJ's characterization of the complaint as alleging only a breach of the duty of fair representation and to his conclusions regarding the reasonableness of the Union's behavior. On review, the NLRB agreed with the General Counsel. See E.R. at 12-22. First, the Board observed that the complaint alleged a violation of 29 U.S.C. Sec. 158(b)(1)(A) independent of the allegation of a breach of the duty of fair representation. Second, it found that the posted rules did, on their face, cover call-backs. A departure from these explicit rules, it concluded, constituted an unfair labor practice. See id. at 15. Third, the Board held that even if the posted rules did not cover call-backs, physical presence was not the sort of "objective, nondiscriminatory standard which the Board has held must be the basis for hiring hall referrals." Id. at 16 (citing United Association of Plumbers and Pipefitters, Local 619 (Bechtel Power Corp.), 268 N.L.R.B. 766 (1984)). Accordingly, the Board ordered the Union (1) to cease and desist from administering its call-back exception, (2) to abide by objective standards in operating its hiring hall, and (3) to make Sturdevant and Nappi whole for any damages suffered. The Board denied the Union's motion for reconsideration and now seeks enforcement of its order.
 
 II.
 DISCUSSION
 A. The Due Process Challenge
 
 8
 The Union claims that the NLRB's complaint alleged only a breach of the duty of fair representation and not an independent violation of 29 U.S.C. Sec. 158(b)(1)(A) based on interference with guaranteed section 7 rights. It argues that it lacked notice of the latter charge, and that principles of due process therefore barred the Board from finding such a violation. We review the adequacy of the Board's procedures de novo. See Lord Jim's v. NLRB, 772 F.2d 1446, 1448 (9th Cir.1985). After due consideration, however, we conclude that the due process challenge must fail.
 
 
 9
 Contrary to the Union's view, the complaint can fairly be construed as alleging an independent violation of 29 U.S.C. Sec. 158(b)(1)(A). Although paragraph 8 of the complaint specifically charges the Union with "fail[ing] to fairly represent Thomas Sturdevant and Amadeo Nappi for reasons which are unfair, arbitrary, invidious and a breach of the fiduciary duty owed to the employees," 1 T.R. item 2, at 3, paragraph 9 more generally alleges the commission of "unfair labor practices affecting commerce within the meaning of ... the Act." Id. These charges in tandem were sufficient to put the Union on notice that the NLRB might proceed under both legal theories. Cf. NLRB v. International Association of Bridge, Structural and Ornamental Iron Workers, Local 433, 600 F.2d 770, 775 (9th Cir. 1979) (holding that "[t]he Board may properly find an unfair labor practice when the issue has been fully litigated even though not specifically pleaded in the complaint"), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980).
 
 B. The Jurisdictional Challenge
 
 10
 The Union also argues that the NLRB lacked jurisdiction to regulate its hiring hall practices absent proof of discrimination or animus on the Union's part. Challenges to the NLRB's assertion of jurisdiction are reviewed de novo. See Columbia Manufacturing Corp. v. NLRB, 715 F.2d 1409, 1410 (9th Cir.1983) (per curiam) (citing Foster v. Tourtellotte, 704 F.2d 1109, 1111 (9th Cir.1983)). This particular challenge, however, is ill-conceived. Under 29 U.S.C. Sec. 160, the NLRB has jurisdiction to determine whether any person named in a complaint has committed an unfair labor practice. Because the complaint in the instant case alleged an unfair labor practice, the Board was empowered to decide the issue. In suggesting that the Board's jurisdiction depends on specific factual findings relevant to the merits, the Union confuses the issue of jurisdiction with that of the merits.
 
 C. The Merits
 
 11
 Finally, we turn to the merits of the case. The Union challenges the Board's finding that it violated 29 U.S.C. Sec. 158(b)(1)(A) both by deviating from its posted referral rules and by using physical presence in the hiring hall as a criterion in call-back situations. This argument is more substantial than the preceding ones.
 
 1. Standard of review
 
 12
 The Board is entitled to enforcement of its order "if it correctly applied the law and its findings are supported by substantial evidence in the record viewed as a whole." Eichelberger v. NLRB, 765 F.2d 851, 853 (9th Cir.1985). We accord considerable deference to the Board's interpretation and application of the National Labor Relations Act, Carpenters Union Local No. 25 v. NLRB, 769 F.2d 574, 579 (9th Cir.1985) (citing Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979)), and will affirm its reasonable conclusions from the evidence even though they may differ from our own, see Eichelberger, 765 F.2d at 853. The Board's disagreement with the ALJ in this case in no way heightens our level of scrutiny: the ALJ's findings "are simply part of the record to be weighed against other evidence supporting the Board." Id.
 
 2. Analysis
 
 13
 The NLRA, 29 U.S.C. Sec. 158(b)(1)(A) (1982), provides that "[i]t shall be an unfair labor practice for a labor organization or its agents ... to restrain or coerce ... employees in the exercise of [their right to organize]." Based on the facts agreed to by the parties, the Board determined that the Union's unposted call-back policy tended to have such a coercive effect.
 
 
 14
 The Union argues that this conclusion was improper in light of the stipulation that there was no evidence of Union animus against the charging parties. We disagree. "[N]o specific intent to discriminate on the basis of union membership need be shown" in order to prevail on a claim under 29 U.S.C. Sec. 158(b)(1)(A). See NLRB v. International Association of Bridge, Structural and Ornamental Iron Workers, Local 433, 600 F.2d 770, 777 (9th Cir.1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). A union violates that provision if it wields its power invidiously or arbitrarily, for such conduct "gives notice that its favor must be curried, thereby encouraging membership and unquestioned adherence to its policies." Id.; accord NLRB v. International Brotherhood of Electrical Workers, Local 11, 772 F.2d 571, 576 (9th Cir.1985); Carpenters Union Local No. 25 v. NLRB, 769 F.2d 574, 580 (9th Cir.1985).
 
 
 15
 This court has indicated that when the hiring hall deviates from written rules without adequate justification, even pursuant to longstanding exceptions routinely applied, the Board may rationally conclude that the union is wielding its power arbitrarily. See NLRB v. International Brotherhood of Electrical Workers, Local 11, 772 F.2d at 576.[1] The Union responds that the call-back policy is not a deviation from the written rules, but rather is a supplement to them. The distinction is subtle and not patently frivolous. Although the ALJ accepted the distinction, the Board rejected it. We defer to the Board's interpretation of the Union's written rules, because we cannot say it is unreasonable and inconsistent with the NLRA's policies. See id. at 575.
 
 
 16
 Like the Board, we are also unpersuaded by the Union's stated justification for the call-back policy--namely that physical presence in the hiring hall is a reasonable method of separating interested from uninterested job applicants. Continuing interest is adequately demonstrated by the applicants' re-registering on the first of each month. Moreover, as the Board noted, physical presence would not be a helpful criterion whenever there were more applicants present in the hiring hall at a given time than there were available jobs. See E.R. at 5. In view of these considerations, the Board was warranted in following its stated position in United Association of Plumbers and Pipefitters, Local 619 (Bechtel Power Corp.), 268 N.L.R.B. 766, 767 (1984), that physical presence in the hiring hall is an arbitrary basis for job referrals.
 
 
 17
 ENFORCEMENT GRANTED.
 
 
 
 [1]
 The Sixth Circuit took a somewhat different approach in NLRB v. Construction and General Laborers' Union Local No. 534, 778 F.2d 284 (6th Cir.1985). Noting the importance of the common law of the shop in interpreting labor agreements, the court approved a 30-year-old unwritten exception to hiring hall rules in the case of union stewards. Two factors distinguish that case from this one: (1) the exception involved union stewards, who arguably occupy a special position in our scheme of collective bargaining; (2) the 30-year-old exception predated the collective bargaining agreement containing the hiring hall rules. Id. at 290. Neither of those conditions are present here