**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**313.34 ACRES OF LAND, MORE OR LESS, SITUATED IN JEFFERSON COUNTY, STATE OF WASHINGTON, Defendant,**

**and**

**Gary Smith; Janice Smith,
Defendants–Appellees.**

No. 88–3679.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1989.

Decided Nov. 8, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc March 6, 1990.

Angus E. Crane, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for plaintiff-appellant.

David H. Boyd, Murray, Dunham & Murray, and Mary Anne Vance, Seattle, Wash., for defendants-appellees.

Before GOODWIN, Chief Judge, and WRIGHT and NORRIS, Circuit Judges.

## ORDER

The opinion filed November 8, 1989, appearing at 889 F.2d 814 (9th Cir.1989) is hereby amended.

With the filing of the amended opinion, the panel has voted unanimously to deny the petition for rehearing.

GOODWIN and NORRIS, Circuit Judges, vote to reject the suggestion for rehearing en banc, and EUGENE H. WRIGHT, Circuit Judge, so recommends:

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35(b).

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

## OPINION

GOODWIN, Chief Judge:

The government appeals an award, under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1987), of attorney and expert witness fees to the landowners in this action to condemn a large rock in Puget Sound which had become the site of a number of private homes. We vacate the decision to award fees and remand for findings on substantial justification.

Gary and Janice Smith ("the Smiths") owned tract 2001 on Protection Island in Washington. The Smiths had purchased the tract in 1972 for $3800. The United States filed a complaint in condemnation on April 11, 1986, to acquire 313.34 acres, which included tract 2001, for the development and management of the Protection Island National Wildlife Refuge, pursuant to the Protection Island National Wildlife Refuge Act, Pub.L. 97–333, 96 Stat. 1623 (1982). Simultaneously with the complaint, a declaration of taking was filed and $1,538,102 was deposited as estimated just compensation for the entire area.

At trial,[1] the government's expert testified that the value of the Smiths' tract was

---

1. Approximately 460 lots were subject to the proceeding. By mutual agreement, only twenty-

two of the lots were tried: eleven selected by the

$2,000. The Smiths' two experts gave valuations of $12,000 and $7,500. The difference in the valuations stemmed from a disagreement as to the highest and best use of the tracts. The government's expert testified that the highest and best use would be primitive camping sites, whereas the Smiths' experts testified that the highest and best use would be a residential subdivision development. The government's expert said he had taken into consideration various problems the Island had encountered with its potable water supply. The Smiths' experts, on the other hand, emphasized that the Island had been developed as a residential subdivision, that eighteen dwellings existed there, and that various solutions to the water supply problem had been implemented.

The jury returned a verdict valuing the Smiths' tract at $7000. The Smiths, unquestionably the "prevailing parties" under the EAJA, filed a motion for an award of expert witness fees, consultants' fees, and attorneys' fees. The district court granted the motion, finding that the government's position was not "substantially justified," and that the fees and expenses were reasonable in amount.

On appeal, the government contends that under evolving law concerning the EAJA in condemnation actions, the district court erred when it found no substantial justification for the government's position, and that the amount of fees and expenses awarded was not reasonable. The Smiths counter that Ninth Circuit precedent clearly supports the court's ruling on substantial justification, and that the fees and expenses awarded were reasonable in amount. They also attack the factual basis of the government's expert's appraisal.

## A. SUBSTANTIAL JUSTIFICATION

### 1. *Idaho County Test*

The Ninth Circuit has not formulated a detailed test for substantial justification in condemnation cases. In *United States v. 101.80 Acres of Land, More or Less, in Idaho County, Idaho*, 716 F.2d 714 (9th

Cir.1983) [hereinafter, *Idaho County*], on which the Smiths rely, we observed that "the government's original deposit was wholly inadequate, representing only a fraction of the true value of the easement condemned as found by the jury," and that "[u]nder such circumstances, we cannot say the district court abused its discretion in concluding that the government's position was not 'substantially justified.'" *Id.* at 728. There, the deposits for the two tracts in question were approximately 34% and 28% of the jury awards. *Id.* at 716–17. The *Idaho County* test thus compares the jury award with the government's deposit. The Smiths argue that because the deposit in their case amounted to only approximately 29% of the award, *Idaho County* dictates that we affirm the district court's finding that the government's position was not substantially justified.

However, the *Idaho County* test is more appropriately characterized as a test of what is required to be an EAJA "prevailing party" in condemnation suits than as a test for substantial justification. At the time *Idaho County* was decided, courts were concerned with determining whether any party other than the government could be a prevailing party in eminent domain cases. *Compare, e.g., United States v. 341.45 Acres of Land, St. Louis County, Minn.*, 542 F.Supp. 482 (D.Minn.1982) (holding the EAJA did not apply to condemnation cases), *rev'd*, 751 F.2d 924 (8th Cir.1984), *vacated* 786 F.2d 1168 (8th Cir.1986), *with, e.g., United States v. 329.73 Acres, Situated in Grenada and Yalobusha Counties, Miss.*, 704 F.2d 800 (5th Cir.1983) (en banc) ("prevailing party" under section 2412(d) would clearly include a landowner who won far more than government had offered). Indeed, most of the discussion in *Idaho County* centered on the question whether the landowners were prevailing parties.

After our *Idaho County* decision, however, Congress amended the EAJA to eliminate the need for courts to define what "prevailing party" meant in condemnation suits:

government, and eleven selected by the landowners on Protection Island.

'[P]revailing party', in the case of eminent domain proceedings, means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government.

Pub.L. No. 99–80, 99 Stat. 183, 185 § 2(c)(2)(H) (1985), *codified as amended,* 28 U.S.C. § 2412(d)(2)(H) (Supp. V 1987). In light of the 1984 amendment, the *Idaho County* test does not sufficiently distinguish between "prevailing party" and "substantial justification." *Cf. Charles Gyurman Land & Cattle Co.,* 836 F.2d 480 (10th Cir.1987) (in case originally brought prior to 1985 amendment to EAJA, district court was reversed for using same test to determine "substantial justification" as "prevailing party").

A more important indication that the *Idaho County* test does not set out the entire standard for "substantial justification" is revealed by the failure of the opinion expressly to consider whether the nonprevailing position has a reasonable basis in fact and in law. The Supreme Court has stated that this is the appropriate test for substantial justification. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988) (citing H.R.Conf. Rep. No. 96–1434 at 22 (1980)).

### 2. *The Eighth Circuit Test*

The Eighth, Tenth, and Eleventh Circuits have fashioned more comprehensive and detailed tests. *See United States v. Charles Gyurman Land & Cattle Co.,* 836 F.2d 480 (10th Cir.1987); *United States v. 1,378.65 Acres of Land, More or Less, Situated in Vernon County, Mo.,* 794 F.2d 1313 (8th Cir.1986) [hereinafter *Phister* ]; *United States v. 640.00 Acres of Land, More or Less, in Dade County, Fla.,* 756 F.2d 842 (11th Cir.1985) [hereinafter *Dade County* ]. The government advocates the adoption of the Eighth Circuit's test of substantial justification as established in *Phister.*

If the government's appraisers are qualified or the other evidence of valuation is sufficient, the government's prelitigation position or offer is substantially justified if it is based upon and consistent with the appraisals or other evidence of valuation. Similarly, the government's litigation position is substantially justified if the amount established by the government during trial is based upon and consistent with the appraisals or other evidence of valuation. The district court should focus upon the relationship between the government's offer, the appraisals, and the valuations established by the government's expert witnesses during trial, rather than the relationship between the government's offer or deposit and the property owner's counteroffer, if any, or the jury award....

794 F.2d at 1317 (citation omitted).

The Smiths counter that a substantial justification test that turns solely upon the determinations whether the government's appraisers were qualified and whether the government's offer and testimony at trial are consistent with its appraisal would create a "virtually irrebuttable presumption in favor of the government." *United States v. 0.376 Acres of Land,* 838 F.2d 819, 828–29 (6th Cir.1988) [hereinafter *Knox County* ]. We agree with the Smiths. *See Knox County,* 838 F.2d at 826 (commenting, in *dictum,* on *Phister:* "We are by no means convinced that the government will always find itself in a safe harbor, absent evidence of bad faith, if its position, however, extreme, is supported by the valuation of a qualified independent appraiser"). However, other factors considered by the Eighth Circuit, as well as by other circuits, are worthy of attention by district courts in performing the substantial justification analysis.

### 3. *Elements in Determining Substantial Justification*

■ As the Tenth Circuit has noted, "Because the sole issue at trial in condemnation proceedings is the very narrow factual issue of valuation, a particularized test is

needed for such cases. The test must be workable in light of the statutory command that the issue be decided upon the record already available to the district court." *Gyurman*, 836 F.2d at 483 (citation omitted). The following considerations, which have been used in the Eighth, Tenth, and Eleventh Circuits, should form the basis of the district court's reasoning when deciding whether the government's position was substantially justified. *See Charles Gyurman Land & Cattle Co.*, 836 F.2d at 485; *Phister*, 794 F.2d at 1317; *Dade County*, 756 F.2d at 850.

(1) The reasonableness and reliability of the government's appraisals introduced into evidence based on the

 (a) qualifications of the appraiser,

 (b) impartiality or lack thereof of the appraiser (for example, it might be important to know how often he or she was employed by the government),

 (c) factual basis of the appraisal; specifically, the reasons the appraisal differs from that of the landowner,

 (d) awards and sales of similar property in the area at or about the time in question;

 (e) whether the comparable sales used by the appraiser were in fact comparable;

(2) A comparison of the government's appraisal, the offer made,[2] and proof of valuation at trial;

(3) Any explanation offered by the government as to discrepancies between its offer, the appraisal(s), and trial evidence;

(4) The good faith, or lack of it, of the government in trying to reconcile the dispute prior to litigation; and

(5) Any other relevant evidence.

 Unfortunately, the record fails to show what considerations informed the district court's decision to award attorneys' fees to the Smiths. In granting the award, the district court stated that, "the position of the government was not substantially justified," but did not enunciate any findings of fact in support of its conclusion.

 This court previously has noted that the "shall ... unless" language of the EAJA creates the presumption of a fee award.[3] *United States v. First Nat'l Bank of Circle*, 732 F.2d 1444, 1447 (9th Cir.1984); *see also Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir.1988). The existence of that presumption, "does not, however, detract from the court's duty to use discretion in evaluating the criteria in the clause following 'unless.'" 732 F.2d at 1447. The failure of the district court to provide any reasons for its decision prevents us from reviewing the propriety of the award. As we observed in *First Nat'l Bank*, "[t]o determine whether the [district court's] conclusion [with regard to an award of attorney fees under the EAJA] was an abuse of discretion, this court needs to know the basis" for the finding of no substantial justification. 732 F.2d at 1447.

Where the district court acts in conformity with the statutory presumption, its statement of supporting reasons need not be elaborate, but effectuation of Congress's intent that the EAJA not operate with a mandatory fee-shifting provision requires that we be provided with some basis for evaluating the district court's decision to award fees. We therefore vacate the judgment and remand the case for specific

---

2. Although the Eighth Circuit test restricts comparison of valuation to the government's evidence at trial, rather than its offer, *Phister*, 794 F.2d at 1317, this is not consistent with a test that encompasses the totality of the circumstances, as the test for substantial justification must. *Timms v. United States*, 742 F.2d 489, 492 (9th Cir.1984). *Cf. also Charles Gyurman Land & Cattle Co.*, 836 F.2d at 484 ("The [Eighth Circuit's] appraisal/offer/position-at-trial comparison is only moderately useful, as these factors will presumably be consistent in most cases.")

3. According to the terms of 28 U.S.C. § 2412(d)(1)(A):

 Except as otherwise specifically provided by statutes, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

findings on the substantial justification issue.

### B. REASONABLENESS OF ATTORNEYS' FEES

In addition to the absence of specific findings justifying the award of attorneys' fees, we also find the amount of the award to be troublesome. We therefore also vacate the portion of the judgment establishing the size of the award. If on remand the district court is able to justify its conclusion that the government's position was not substantially justified, it then should reconsider the government's arguments that the amount of attorneys' fees was not reasonable under the statute for two reasons: (1) there was no justification shown in the record for awarding fees at an hourly rate higher than the statutory rate; and (2) the Smiths' attorneys failed adequately to document the hours for which they were reimbursed.

With regard to the first contention, the district court should take note of *Pierce v. Underwood.* There, Justice Scalia stated,

If 'the limited availability of qualified attorneys for the proceeding involved' meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the $75 cap—since the 'prevailing market rates for the kind and quality of the services furnished' are obviously *determined* by the relative supply of that kind and quality of services.... We do not think Congress meant that if the rates for all lawyers in the relevant city—or even in the entire country— come to exceed $75 per hour (adjusted for inflation),[4] then that market-minimum rate will govern instead of the statutory cap. To the contrary, the "special factor" formulation suggests Congress

thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be.

108 S.Ct. at 2553–54 (footnote omitted).

The district court awarded attorneys' fees at the rate of $125 per hour. As "special factors," it listed the following:

3. The prevailing market rate for the kind and quality of services furnished by defendants' attorneys is $125 per hour.

4. The rate of $125 per hour is justified due to the quality and nature of services performed by defendants' attorneys.

On remand, should the district court make an award of attorney's fees above the $75–per–hour rate established by the EAJA, 28 U.S.C. § 2412(d)(2)(A)(ii), the court should state reasons consistent with *Underwood.* See *Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984); *see also Pirus v. Bowen,* 869 F.2d 536, 540–42 (9th Cir.1989) (upholding award of attorneys' fees above the $75–per–hour cap where district court made explicit, case-specific, *Underwood*-type findings as to why increase was merited).

As to the government's second contention, that the Smiths' attorneys did not adequately document the hours for which they claimed fees, we note that in the Smiths' Memorandum in Support of Motion for Award of Fees and Expenses, the Smiths' attorneys explained both the method by which they had calculated the total hours claimed, and the method by which they had calculated the experts' fees that should be reimbursed. On remand, however, the district court should give attention to the formulas by which payment was allocated for the attorneys' work before, during, and after the trial.[5]

---

**4.** Any appropriate adjustment for inflation may be made by the district court on remand. *See Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1463–64 (9th Cir.1988).

**5.** The Smiths' attorneys divided their during-trial and post-trial time by 11, the number of tracts chosen by the landowners to be tried, whereas they divided their pretrial time by 197, the total number of tracts at issue. This ap-

proach makes sense only if it was the case that the 11 owners of the 11 tracts chosen for trial bore the expense of trial, rather than all 197 landowners sharing the costs equally. Spreading the costs among all the landowners would be consistent with the fact that the 11 tracts were "trial balloons" designed to facilitate settlement of the disputes concerning the remaining tracts. The record does not indicate who was

VACATED and REMANDED for findings on substantial justification and review of the amount of attorneys' fees awarded. No party shall recover costs on appeal.

responsible for paying the attorneys for various portions of the work performed.