CLAIR S. HUFFMAN & ESTATE OF PATRICIA C. HUFFMAN, DECEASED, CLAIR S. HUFFMAN, EXECUTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huffman v. Commissioner
Docket No. 8542-89
United States Tax Court
T.C. Memo 1991-144; 1991 Tax Ct. Memo LEXIS 163; 61 T.C.M. (CCH) 2289; T.C.M. (RIA) 91144; April 2, 1991, Filed *163 An appropriate order and decision will be entered. Steven L. Staker, for the petitioners. Steven R. Asmussen, for the respondent. NAMEROFF, Special Trial Judge. NAMEROFF
MEMORANDUM FINDINGS OF FACT AND OPINION This case is before the Court on petitioners' Motion for Reasonable Litigation Costs (the Motion), filed pursuant to Rule 231 and section 7430. [1] Respondent had determined a deficiency in petitioners' 1985 Federal income tax in the amount of $ 18,455, plus additions to tax under section 6653(a)(1) in the amount of $ 922.75, section 6653(a)(2) in the amount of 50 percent of the interest due on the entire underpayment, and section 6661(a) in the amount of $ 4,613.75, all of which have been conceded by respondent. FINDINGS OF FACT Clair S. Huffman (petitioner) resided in Camarillo, California, *164 when the petition was filed in this case. Petitioner is an attorney and specializes in worker's compensation law. Petitioners' 1985 return included a schedule of income or losses from partnerships, which reflected ten partnerships, their employer identification numbers (EIN)(except for "ZGT III" for which an EIN was "applied for"), and various amounts of income totalling $ 6,448 and losses correctly totalling $ 54,397. In a notice of deficiency dated January 31, 1989, respondent disallowed petitioners' gross partnership losses of $ 54,397. The "explanation of adjustments" stated: "The sale of your interest in the partnership represents ordinary income instead of the capital gain reported, to the extent shown in the accompanying computation." There was no accompanying computation. Respondent contends that the explanation of adjustments was a "typographical error," but never stated what the correct explanation should have been. Petitioners reported a $ 949 net capital gain on their Schedule D pertaining to security investments, but did not report $ 54,397 or any other amount as capital gain from the sale of a partnership interest. Petitioners further allege that all of the partnerships *165 appearing on their joint return were partnerships which have ten or more partners, thus making them subject to the TEFRA [2] partnership provisions of section 6221 et seq. As far as petitioners knew, none of the partnerships were under audit at the time of their petition. Upon receipt of the notice of deficiency, petitioner sought the legal counsel of attorney Steven L. Staker (Staker), of the law firm Staker and Gose, in Camarillo, California. On February 3, 1989, Staker requested an audit reconsideration from the 90 day section in San Jose. The request was granted, and on February 23, 1989, Staker met with revenue agent Larry Penney (Penney) who had been the examining agent. Staker provided Penney with all the Forms K-1 for the partnerships shown on the return, with the exception of the Form K-1 for the "ZGT III" partnership, for which a loss was reported in the amount of $ 6,926. Penney did not review or compare any data from *166 the Forms K-1 with petitioners' Schedule E. Rather, Penney copied only the EIN's from each Form K-1. Penney testified that, with the exception of the "ZGT III" partnership, there was no additional information which he obtained from examining the Forms K-1 which was not already on petitioners' 1985 Schedule E. On February 23, 1990, Staker sent Penney the top portion of the "ZGT III" partnership Form K-1, which only revealed the EIN. Thereafter, Penney agreed that petitioners owed no tax and stated that respondent's San Jose office would issue a "no change" letter. In respondent's objection to petitioners' motion, respondent alleges that the "no change" letter had been sent. However, at the hearing, respondent confirmed that it had been prepared by Penney, but had never been sent. On February 23, 1989, Staker sent a letter to respondent's 90 day section in San Jose requesting the necessary paperwork to enter into an agreement to rescind the notice of deficiency. No response was received by petitioners or Staker. On April 24, 1989, Staker telephoned Penney to ascertain why a "no change" letter or a response to the request for rescission had not been received. Penney responded *167 that he did not know. Staker telephoned the 90-day section in San Jose and spoke with Dan Wagner (Wagner), who indicated that respondent would not rescind the notice of deficiency, but would make an assessment of a "zero tax." Wagner stated that this probably had been done in petitioners' case, but the case could be sent back to the audit group if not approved upon review. At this point, uncertain as to the status of his client's case, Staker filed a petition with this Court on April 28, 1989, to prevent the 90 day statutory period from lapsing. (A computer transcript of petitioners' 1985 tax return module reflects a zero entry as of April 24, 1989, at cycle 8915, but this entry was never explained to the Court. Respondent, in his answer filed June 30, 1989, conceded that petitioners owed no tax or additions to tax, but denied that the notice of deficiency contained errors when issued. Respondent denied, for lack of sufficient information, whether the partnerships shown on Schedule E related to partnerships with ten or more partners and whether any of them were under audit. Respondent also denied that the determination by the Commissioner was arbitrary and capricious and without *168 substantial justification. On August 14, 1989, Staker spoke with attorney Elizabeth Rawlins from respondent's Thousand Oaks office. She indicated that the attorney responsible for this case would be Steven Asmussen (Asmussen), from San Jose District Counsel. On July 26, 1989, Asmussen told Staker that the case had been transferred to the Thousand Oaks District Counsel Office. On the same day, the docket clerk at Thousand Oaks District Counsel's office indicated that the case had been assigned, and on August 8, 1989, Staker was informed by the docket clerk that the case had been transferred back to San Jose. Thereafter, Staker made two unsuccessful attempts to contact San Jose District Counsel. Since he could not contact an attorney for respondent with responsibility for the case, Staker, on August 14, 1989, filed a Motion for Judgment on the Pleadings, requesting this Court to find no deficiency and no additions to tax for 1985. The motion did not include a claim for litigation costs. Respondent filed a notice of no objection with the Court on September 7, 1989, and on September 13, 1989, we granted petitioners' motion. On August 15, 1989, Asmussen, after receiving petitioners' *169 Motion for Judgment on the Pleadings, sent Staker a proposed decision document for stipulation, reflecting that there was no deficiency or addition to tax for 1985. The document did not consider litigation costs. Up to this point, there had been no discussion of litigation costs between respondent and Staker. Thereafter, the parties entered into discussions regarding petitioners' entitlement to litigation costs. Staker returned the proposed decision document because it (1) contained an error in the caption; (2) language regarding petitioners' waiver of restriction on assessment and collection was inappropriate; and (3) the decision did not deal with the issue of reasonable litigation costs. On October 18, 1989, petitioners filed the Motion pursuant to Rule 231 and section 7430. Petitioner also filed an affidavit indicating that, at the time the petition in this action was filed, the combined net worth of petitioner and his deceased spouse did not exceed two million dollars. On October 23, 1989, we ordered the decision previously entered to be vacated and set aside, in order to consider petitioners' Motion. On January 2, 1990, Staker filed an amendment to the Motion, wherein *170 petitioners requested that they be awarded reasonable litigation costs incurred after October 18, 1989. Respondent has filed an objection and a supplemental objection to petitioners' Motion. On May 29, 1990, a hearing on petitioners' Motion was afforded to the parties. Petitioners request reimbursement for attorney's fees of $ 8,400.00 (67.2 hours of attorney time at $ 125 per hour) plus miscellaneous costs in the amount of $ 156.77. We summarize the attorneys' time as follows: Purpose
Hours
Conferences, research and drafting petition 5.9
Review of respondent's answer, discussions with
respondent
.8
Preparation of Motion to Amend Captions and
Substitute Party Petitioner
1.4
Preparation of Motion for Judgment on the Pleadings
3.3
Review of proposed decision and discussions with respondent
5.8
Preparation of Motion for Litigation Costs
and supporting affidavits
10.4
Preparation of Amendment to Motion for Litigation
Costs, (to add one paragraph to include costs incurred
after filing of motion) and review of respondent's
objection
2.5
Reply to respondent's objection
24.6
Preparation for hearing on Motion (includes 1.4 hours
for co-counsel Kevin G. Staker and Gregory R. Gose)
5.7
Hearing on Motion (includes 3.6 hours for co-counsel
Kevin G. Staker)
6.8
Total
67.2
*171 5.9 hours were spent prior to the filing of the petition, 11.3 hours were incurred between filing of the petition and preparing the Motion, and 50 hours were devoted to recovering petitioners' costs. OPINION Section 7430[3] *172 deals with awards for administrative costs and litigation costs. Section 7430(a)(1) permits an award to the prevailing party of reasonable administrative costs (as defined in section 7430(c)(2)) incurred in connection with such administrative proceeding within the Internal Revenue Service. The term "prevailing party" generally means a taxpayer who, as relevant herein, establishes that the position of the United States in the proceeding was not substantially justified. Section 7430(c)(4)(A)(i). Further, the term "position of the United States" means the position taken in an administrative proceeding determined as of the earlier of the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or the date of the notice of deficiency. [4]Section 7430(c)(7)(B). Section 7430(a)(2) permits an award to the prevailing party for reasonable litigation costs incurred in connection with a court proceeding. Reasonable litigation costs are defined in section 7430(c)(1). Again, the prevailing party must be the party that establishes that the position of the United States was not substantially justified. The "position of the United States" as to reasonable litigation costs refers to the position taken by the United States in a judicial proceeding. Section 7430(c)(7)(A). Because petitioners are requesting reimbursement for attorney's fees and other litigation costs incurred both prior to and after *173 the filing of the petition herein, we deem petitioners' motion to be a motion for reasonable administrative costs and reasonable litigation costs. Respondent concedes that petitioners have substantially prevailed with respect to the issues and amounts in controversy (see section 7430(c)(4)(A)(ii)). Respondent also concedes that petitioners have exhausted their administrative remedies available within the Internal Revenue Service (see section 7430(b)(1)). Respondent objects to any award of costs to petitioners on the grounds that (1) respondent's position was substantially justified; (2) petitioners unreasonably protracted the proceedings (section 7430(b)(4)); and (3) in the alternative, that the amount of costs claimed are not reasonable (section 7430(c)(1) and (2)). Petitioners have the burden of proof on all issues relating to their claim. Rule 232(e). Administrative Costs
As indicated above, in order for petitioners to recover reasonable administrative costs, they must show that they were the prevailing party in the administrative proceeding. [5] Such proof includes a showing that the position taken in the administrative proceeding by the United States was not substantially *174 justified. In view of the fact that there was no notice of decision from the Internal Revenue Service Office of Appeals, we look to the date of the notice of deficiency. Section 7430(c)(7)(B). Accordingly, as to the administrative costs, we are concerned with respondent's action during the time between the date of the notice of deficiency and the commencement of the litigation. Whether respondent's position was substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances, as well as the legal precedents relating to the case. Sher v. Commissioner, 89 T.C. 79, 84-85 (1987), affd. 861 F.2d 131 (5th Cir. 1989). Under section 6221, applicable to partnership taxable years beginning after September 3, 1982, "Except as otherwise provided *175 in this subchapter, the tax treatment of any partnership item shall be determined at the partnership level." Without going into an elaborate discussion, suffice it to say that generally all partnership items must be determined in a partnership proceeding, and the individual partner's return is adjusted automatically as to that individual's share of any adjusted partnership item at the conclusion of the partnership proceeding. A partner's share of income or loss is a partnership item. Section 6225 prohibits the issuance of a notice of deficiency for such items before the completion of a partnership audit. Maxwell v. Commissioner, 87 T.C. 783 (1986); Frazell v. Commissioner, 88 T.C. 1405 (1987). Respondent asserts that there was a de facto concession at the administrative level. For some unexplained reason, Penny needed to compare Form K-1 with petitioner's tax return; subsequent to his comparisons, Penney agreed that petitioners owed no tax. Penney still was apparently unaware of the need for partnership proceedings. Penney represented that respondent's San Jose office would issue a "no change" letter. However, the letter was never sent *176 to petitioners or Staker. It was because Staker was unable to obtain a "no change" letter, or a rescission of the notice of deficiency [6] *177 that petitioner filed a petition in this Court on April 28, 1989. Based on the record herein, we conclude that respondent's position during the administrative proceeding was unjustified. [7] Accordingly, we award petitioners their reasonable administrative costs incurred subsequent to the receipt of the notice of deficiency and prior to the filing of the petition, incurred to persuade respondent that the notice of deficiency was improper and to rescind that notice of deficiency. Litigation Costs
In order to recover reasonable litigation costs, petitioners must show that the position taken by the United States in the judicial proceeding was not substantially justified. Section 7430(c)(7)(A). In the judicial proceeding, i.e., this Tax Court proceeding, petitioners filed a petition alleging error on the part of respondent and facts in support thereof. The answer thereto filed by respondent within 60 days thereof admitted that petitioners had no tax liability, but denied that the issuance of the notice of deficiency was improper. The position of the United States in a judicial proceeding is generally evidenced by the position initially stated in respondent's answer. [8] Thus, it is clear that respondent's position in the judicial proceeding (without regard to actions pertaining to the *178 Motion) was not only not substantially unjustified, but was in clear recognition of the applicable provisions of the law. Accordingly, petitioners have not shown that respondent's position in the judicial proceeding was substantially unjustified. Sher v. Commissioner, supra.Petitioners are not entitled to recover reasonable litigation costs. In view of this conclusion, we need not consider respondent's contention that petitioners unreasonably protracted the proceedings. *179 Amount of Costs
Having found that petitioners meet all the requirements for entitlement to reasonable administrative costs, we now turn to the amount to be awarded. Respondent takes the positions that (1) the attorney's fees expended were unreasonable under the circumstances, particularly given the number of hours expended after respondent conceded the case, and (2) that petitioners have not established that an award of attorney's fees in excess of the statutorily enumerated rate of $ 75 per hour, under section 7430(c)(1)(B)(iii), is justified. Having determined that petitioners are entitled to reasonable administrative costs, we consider the time spent by Staker prior to the filing of the petition reasonable. We therefore award attorney's fees for the 5.9 hours incurred after the issuance of the notice of deficiency and up to the filing of the petition. Moreover, we think it appropriate for petitioners' counsel to have spent time preparing, filing, discussing, and defending the Motion. We believe that it was unreasonable to expend 50 hours of attorney time to recover costs pertaining to the entire 17.2 hours incurred prior to the Motion. Accordingly, bearing in mind petitioners' *180 burden of proof, we award reimbursement for 10 of the claimed 50 hours for preparing and defending the Motion. Cassuto v. Commissioner, 93 T.C. 256, 270 (1989); Sokol v. Commissioner, 92 T.C. 760, 767 n. 12 (1989); Mearkle v. Commissioner, 90 T.C. 1256, 1262-1263 (1988). [9]
We next consider the hourly rate for the attorney's fees to which petitioners are entitled. Petitioners seek reimbursement at their counsel's rate of $ 125 per hour. Section 7430(c)(1)(B)(iii) provides that attorney's fees "shall not be in excess of $ 75 per hour unless the court determines that an increase *181 in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." In interpreting section 7430, we bear in mind that "Except to the extent it has waived its immunity, the Government is immune from claims for attorney's fees. Waivers of immunity must be 'construed strictly in favor of the sovereign, ' and not 'enlarge[d] . . . beyond what the language requires." (Citations omitted.) Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 77 L. Ed. 2d 938, 103 S. Ct. 3274 (1983). We thus must read section 7430 narrowly, construing any unexpressed allowance of costs as a declination by Congress to waive sovereign immunity for any costs not expressly allowed. (Citations omitted.)" Cassuto v. Commissioner, supra at 272. We first consider the provision in section 7430(c)(1)(B)(iii) which allows the Court to determine "that an increase in the cost of living . . . justifies a higher rate." In interpreting section 7430 we have held that it is appropriate to consider case law dealing with the Equal Access to Justice Act (28 U.S.C. sec. 2412) (1988) (EAJA). Powell v. Commissioner, 91 T.C. 673, 682 (1988); *182 Sher v. Commissioner, supra at 84; Cassuto v. Commissioner, supra at 272-273. Section 7430(c)(1)(B)(iii) closely parallels section 2412(d)(2)(A)(ii) of the EAJA. Both sections provide for reimbursement of attorney's fees in excess of $ 75 per hour if "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." Since the instant case is appealable to the Ninth Circuit, we look to that court's holdings under the EAJA. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Under the EAJA, the Ninth Circuit has awarded attorney's fees in excess of the $ 75 statutory rate based on the increase in the Consumer Price Index (CPI) since October 1, 1981, the date of enactment of the EAJA's $ 75 hourly cap. Pub. L. 96-481, sec. 204, 94 Stat. 2327, 2329, 2330. See United States v. 313.34 Acres of Land, 889 F.2d 814, 819 n.3 (9th Cir. 1989), vacated and remanded on other issues 897 F.2d 1473 (9th Cir. 1989); Pirus v. Bowen, 869 F.2d 536, 540 n.6 (9th Cir. 1989); *183 Animal Lovers Volunteer Assn., Inc. v. Carlucci, 867 F.2d 1224, 1227 (9th Cir. 1989); and Ramon-Sepulveda v. INS, 863 F.2d 1458, 1463-64 (9th Cir. 1988). As of October 1, 1981, the date at which the Ninth Circuit begins to adjust the $ 75 rate for increases in the cost of living, the CPI for all urban consumers (CPI-U) [10] was 281.3 in the greater Los Angeles area. Of the allowable 15.9 hours, 5.9 hours were incurred during February-April of 1989, while 10 hours were incurred between September 14, 1989, and May 1990. Petitioner has supplied the Court with statistics from the Department of Labor showing the comparable CPI-U for October and November of 1989 to be 384.2 and 384.1, respectively. We believe, in the absence of any other information, that it is reasonable to conclude that the October-November period *184 of 1989 would represent the average of the CPI-U for the entire period from February 1989 to May 1990. Accordingly, we allow attorney fees at $ 102.42 per hour based upon the following formula: ($ 75 X (384.15/281.3)) = $ 102.42 Next, we consider whether petitioners are entitled to an hourly rate over and above the cost of living adjustment because of the presence of a "special factor." Petitioners contend that they are entitled to the fair market value of their counsel's hourly rate, or $ 125, because of the prevailing market rate in Ventura County, the dearth of qualified tax attorneys in Ventura County, and the specialized training of petitioners' counsel. In Cassuto v. Commissioner, supra at 274, we stated that "the prevailing hourly rate in an area is not a special factor to justify an increased rate under section 7430." The Supreme Court, in Pierce v. Underwood, 487 U.S. 552, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988), has interpreted the "special factor" formulation under section 2412(d)(2)(A)(ii) of the EAJA. "We do not think Congress meant that if the rates for all lawyers in the relevant city-or even in the entire country-come to exceed $ 75 per hour (adjusted *185 for inflation), then that market-minimum rate will govern instead of the statutory cap. To the contrary, the 'special factor' formulation suggests Congress thought that $ 75 an hour was generally enough public reimbursement for lawyers' fees, whatever the local or national market might be." Pierce v. Underwood, 108 S. Ct. at 2553-2554. See also Pirus v. Bowen, supra at 541. Therefore, we do not accept a prevailing market rate argument. Concerning a dearth of qualified tax attorneys, the Supreme Court in Underwood found an argument based upon "limited availability" to be unconvincing. It is not enough to simply say "that lawyers skilled and experienced enough to try the case are in short supply." Pierce v. Underwood, supra at 2553. See also Pirus v. Bowen, supra at 541. Accordingly, petitioners have not satisfied their burden of proof on this aspect, and we do not accept petitioners' second argument. Petitioners also argue that their counsel possesses specialized training in the area of TEFRA partnerships, which should qualify as a "special factor". Staker was a former attorney in *186 the Office of Chief Counsel, Internal Revenue Service. During such employment, he received approximately 40 hours of instruction in TEFRA partnership proceedings. In addition, respondent does not dispute that Staker has specialized training. The Supreme Court in Underwood has set forth a test concerning the determination of a "special factor" for purposes of section 2412(d)(2)(A)(ii) of the EAJA. "[T]he exception for 'limited availability of qualified attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question * * *" Pierce v. Underwood, supra at 2554 (emphasis added). The Ninth Circuit, in Pirus v. Bowen, supra at 541, allowed attorney's fees over the $ 75 cap of the EAJA under a "special factor" exception, utilizing that test. The attorney in that case had specialized knowledge in the practice of law under the Social Security Act. However, the Ninth Circuit held that it was not enough *187 "that the attorney possess distinctive knowledge and skills." Rather, the "qualifications warrant additional fees only if they are in some way needed in the litigation and cannot be obtained elsewhere at the statutory rate". Pirus v. Bowen, supra at 541-542. In Pirus, the special expertise of the attorney was needed because the case involved a highly complex area of the Social Security Act, with which the attorney had prior litigation experience. Here, although Staker possesses specialized skill and knowledge in the area of TEFRA partnerships, there is no showing that his specialized training was "needful for the litigation in question." The actions taken by Staker did not necessitate a level of expertise and prior experience such that only someone with his specialized training could have adequately represented petitioners. Respondent, although ineptly, did attempt to resolve the matter at the administrative level. After this failed (and after the subsequent filing of a petition in this Court), respondent conceded the case in his answer. Staker's "specialized training" was never put to the test. Although artful briefs and arguments were presented *188 by Staker to this Court, they dealt exclusively with petitioners' reimbursement of litigation costs. His only appearance before this Court was a hearing on the Motion and not on the disallowance of partnership losses. Therefore, we find that petitioners have not established a "special factor" to justify an increased rate under section 7430. Accordingly, petitioners are entitled to administrative costs for Staker of $ 1,628.48, based upon 15.9 hours of attorney's services at the rate of $ 102.42 per hour. Petitioners also seek reimbursement for other costs in the amount of $ 156.77. The itemized billing shows $ 60.00 for filing the petition, $ 67.10 for photocopying, $ 20.45 for postage, $ 4.72 for long distance phone calls, and $ 4.50 for paralegal fees, all of which pertain to the period commencing with the filing of the petition, except that $ 52.82 pertains to the period February 3, 1989 through October 18, 1989, for postage, telephone calls, and photocopying. In the absence of any additional information, we find that $ 20.00 constitutes additional recoverable administrative costs, and the balance is nonrecoverable litigation costs. An appropriate order and decision will *189 be entered. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect at all relevant times, unless otherwise indicated. All Rule references are to the Court's Rules of Practice and Procedure.↩
2. Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 648.↩
3. Since the proceedings in the instant case were commenced after November 10, 1988, section 7430↩, as amended by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6239, 102 Stat. 3743, will apply.
4. Section 7430(c)(7) provides: The term "position of the United States" means -- (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and (B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of -- (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency.↩
5. Clearly, Staker's attempts to have the notice of deficiency rescinded involved procedures and actions before respondent. Thus petitioners were involved in an administrative proceeding. Section 7430(c)(5)↩.
6. Respondent, in his brief, asserts that, pursuant to Rev. Proc. 88-17, 1988-1 C.B. 692, and Internal Revenue Manual section 4466.1(c)(3), the 90 day unit in San Jose could not rescind the notice of deficiency because less than 90 days remained on the statute of limitations and petitioners had refused to sign a consent to extend the statute of limitations, Form 872. However, section 6212(d) provides that a rescission of a notice of deficiency "shall [not] affect any suspension of the running of any period during which the rescinded notice was outstanding." TAMRA, supra↩ at section 1015(m), effective for notices issued after January 1, 1986. Therefore, the statute of limitations was tolled and respondent's explanation is unavailing.
7. The notice of deficiency also included an adjustment of $ 14 for unreported income; however, this was clearly de minimis and would not have engendered a notice of deficiency, much less the determination of additions to tax for negligence and substantial understatement of income tax.↩
8. We are aware that the Ninth Circuit has held that the phrase "in the civil proceeding" in a prior version of section 7430(c)(7)(A) requires consideration of respondent's position as of the date of the notice of deficiency. Sliwa v. Commissioner, 839 F.2d 602 (9th Cir. 1988). However, Sliwa↩ is not applicable to cases decided under TAMRA, and "in a civil proceeding" is much broader than "in a judicial proceeding," particularly when a separate provision is made in the statute for administrative proceedings.
9. Neither party contended that respondent's position in regard to the fees incurred to recover litigation costs must itself be evaluated. In this regard see Commissioner, I.N.S. v. Jean, 496 U.S. 154, 110 S. Ct. 2316, 110 L. Ed. 2d 134 (1990). Note, however, that attorney fees awarded by the Court may be included in the definition of "administrative costs" under section 7430(c)(2)↩.
10. The Court will utilize the CPI for greater Los Angeles rather than a national average. See Cassuto v. Commissioner, 93 T.C. 256, 273↩ n.6 (1989).